238 So.2d 284 (1970)
DADE COUNTY CLASSROOM TEACHERS' ASSOCIATION, Inc., a Florida Corporation Not for Profit, Appellant,
v.
Leonard H. RUBIN, Etc., et al., Appellees.
No. 38386.
Supreme Court of Florida.
July 29, 1970.
*285 Tobias Simon, Miami, for appellant.
Wm. S. Frates, Asst. State Atty., for appellees.
ADKINS, Justice.
This is a direct appeal from an order denying a motion to quash a rule nisi for contempt. The appellant was charged with violating the provisions of an interlocutory injunction. By its motion to quash the rule nisi the appellant alleged deprivation of rights of speech and assembly thereby depriving appellant of rights guaranteed by the First, Thirteenth and Fourteenth Amendments, United States Constitution, and attacked the validity of Fla. Stat. § 839.221, F.S.A.
This Court previously denied a motion to dismiss or quash this interlocutory appeal and we accept jurisdiction.
The appellant, defendant below, will be referred to as the "Association." The appellees will be referred to as the "Plaintiffs."
On February 19, 1968, at the behest of the Association there was a massive work stoppage by the teachers in Dade County. On February 20, 1968, the Plaintiffs, Leonard H. Rubin, individually and as father and next friend of Deborah Rose Rubin, an infant and a student in the Dade County School System, filed a complaint seeking injunctive relief against the Association. The suit was brought as a class action and alleged that the Association, its membership, officers and directors conspired to cause teacher members to breach their respective contracts, submit their respective resignation as teachers, and refuse to appear and perform their respective functions as teachers. On the same day the Circuit Judge entered an order directing the Association to appear at a hearing on Plaintiffs' application for temporary injunction. The hearing was set for February 22, 1968, and the Association was required to show cause at that time why a temporary injunction should not be entered against the Association and its members to enjoin them from further conspiring to strike until testimony was taken in the cause. After the hearing, a temporary injunction was entered on February 22, 1968. The order granting the injunction recited that notice was given to the Association of the application. The injunction contained the following provision:
"That defendant, CTA, their officers, agents, servants, employees and members are hereby enjoined and restrained as a part of any scheme or design to strike *286 against the Dade County School Board, from counseling, enticing, coercing or otherwise undertaking to persuade or induce any teacher with whom there has been executed a written contract with the Dade County School Board, to fail, decline or refuse to carry out and perform such teacher's obligations under such contract, and from counseling, enticing, coercing or otherwise seeking to bring about concerted and massive refusal of the teachers to perform their duties under their contracts; or to otherwise perform any act or acts which would bring about a strike or work stoppage or a threat to strike on the part of the teachers under contract with the Dade County School Board or prevent the resumption of normal activities of the teachers and students."
In his brief, counsel for the Association states that the cause was removed to the United States District Court on the morning of February 22, 1968. However, the record does not contain the petition for removal nor does it appear from the record that the Association gave written notice of the petition for removal to the adverse parties and filed a copy of the petition with the Clerk of the State Court. 28 U.S.C.A. § 1446(e), reads as follows:
"Promptly after the filing of such petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." (Emphasis supplied.) (p. 347)
The hearing which resulted in the original temporary injunction was held on February 22, 1968, and an order of remand was entered by the United States District Judge on February 23, 1968. The Association contends that the State Court was without jurisdiction until the order of remand was entered by the District Court. In discussing the questions of jurisdiction, where the requirements of 28 U.S.C.A. § 1446(e) are not complied with, the Federal District Court in Hornung v. Master Tank & Welding Company, 151 F. Supp. 169 (D.C.N.D. 1957), said:
"The state court acquired jurisdiction of the present action when the Summons and Complaint were duly served upon the defendants in accordance with the Nonresident Motorist Statute. That jurisdiction was active until the removal was finally effected by the filing of a copy of the Petition for Removal with the state court clerk. 28 U.S.C.A. § 1446(e). It then became passive or dormant, pending disposition of the case in federal court. Doerr v. Warner, 1956, 247 Minn. 98, 76 N.W.2d 505. Federal jurisdiction vested for all purposes when the Petition was filed in this court, the later notice thereof and the filing of a copy thereof in state court operating retroactively to `effect the removal' as of the date of filing the Petition in federal court. Shenandoah Chamber of Progress v. Frank Associates, Inc., D.C. Pa. 1950, 95 F. Supp. 719.
"There is a subsisting dual jurisdiction as to a removed case, and during the brief interlude between filing the Petition for Removal in federal court and the filing in state court of a copy of such Petition, both courts have active jurisdiction. Donlan v. F.H. McGraw & Co., D.C.N.Y. 1948, 81 F. Supp. 599." (p. 172)
See also Cavanaugh v. Atchison, T. & S.F. Ry. Co., 103 F. Supp. 855 (D.C.Mo. 1952); Cyclopedia of Federal Procedure (Third Edition), Volume 2, § 3.121; Annotation, 45 A.L.R.2d 1045, 1047.
The burden was upon the Association to show by the record that the removal to the United States District Court was effected prior to the hearing of February 22, 1968, and was not remanded prior to the hearing of February 23, 1968, *287 when the second injunction, substantially identical to the first was entered. As to the burden of appellant to make error appear in the record, see Maloy, Fla. Appellate Prac. and Proc., § 26.07, p. 349. The Association failed to meet this burden and the record fails to show that the State Court was without jurisdiction to enter each of the temporary injunctions.
On February 26, 1968, an order for hearing for contempt was entered for alleged violation of the injunctive orders of the State Court entered on February 22 and February 23, 1968. On February 28, 1968, the day of the contempt hearing, a motion to dissolve the temporary injunction was filed and denied.
The Association and its officers were found guilty of contempt and a fine of $30,000. was assessed.
The Association then entered its appeal to this Court and the contempt judgment was reversed because the motion of the Association for a jury trial was denied by the Circuit Judge. F.R.C.P., Rule 1.840(a) (4), 33 F.S.A., then provided that issues of fact in the contempt proceeding should be determined by a jury of six persons unless waived by the defendant. This requirement was subsequently deleted from the rule. This Court in its opinion, Dade County Classroom Teachers' Association, Inc. v. Rubin, 217 So.2d 293 (Fla. 1968), said:
"We are unable to determine from the record before us that the injunction entered against appellant was based on Sec. 839.221, supra, since neither the complaint nor order of the court makes any reference to the provisions of the statute, but both relate only to concerted action designed to effect a work stoppage by teachers. The constitutional issues, in any event, as well as that of statutory validity if relevant, are fully determined against appellant's contentions by the opinion of this Court in the Pinellas County Classroom Teachers Ass'n., Inc. et al. v. B.P.I., of Pinellas County, filed Sept. 18, 1968, Fla., 214 So.2d 34.
"There is in our opinion no merit to other objections by appellant relating to alleged ambiguity of the restraints imposed and to jurisdictional questions raised by simultaneous federal court proceedings. Any doubt on the latter point was clearly resolved by order of remand entered immediately before the February 23rd injunction which forms the predicate for the contempt adjudication challenged by appellant." (pp. 295, 296)
After the mandate was issued by this Court, the State Court entered its rule nisi in contempt proceedings wherein it was alleged that the Association and its officers had willfully violated the injunction of February 23, 1968, in various respects on February 25, 26, 27 and 28, 1968. The Association filed its response to the rule nisi and a motion to quash on the grounds, inter alia, that the temporary injunction was issued while the case was removed to the United States District Court; that the injunction was entered without notice; that the injunction was issued pursuant to an unconstitutional statute, Fla. Stat. § 839.221, F.S.A., and deprived the Association of rights guaranteed by the First, Thirteenth and Fourteenth Amendments, United States Constitution. This appeal resulted from the order of the trial court denying the motion to quash.
The Association contends that the injunction of February 23, 1968, was entered ex parte and without giving the available adversary parties or their counsel the opportunity to be heard or to participate in the proceedings.
The record clearly shows that the Association received notice of the application for the injunction entered February 22, 1968, and an opportunity to participate in the proceedings. The Association has not furnished this Court with a transcript of the proceeding of February 22, 1968. The temporary injunction entered February *288 23, 1968, is substantially the same as the one entered the previous day, and a copy of it was served on the Association on February 23, 1968, at 6:50 p.m. The Association was given an opportunity for an adversary proceeding on February 22, 1968. The entering of another injunction substantially the same as the previous one was appropriate under the circumstances of the case sub judice and distinguishes it from Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325.
Aside from the fact that in the prior appeal of this case the Association acknowledged that the injunction of February 23, 1968 was merely a reissuance of the one of February 22, 1968 (of which they had more than adequate notice and an opportunity to be heard), it is clear that because of their willful violations of the injunction and the absence of any resort to their legal remedies for testing the validity of the injunction, the Association and its officers have no standing to raise that issue, in the absence of a showing that the injunction was void. The Association did not seek to challenge the validity of the injunction until the very day of the original contempt hearing. Under these circumstances, the Association cannot now claim the injunction was invalid, for the proper procedure was to seek judicial review of the injunction and not to disobey it, no matter how well-founded their doubts might be as to its validity. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); Carroll v. President and Commissioners of Princess Anne, supra; Seaboard Airline Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529 (1931); State ex rel. Everette v. Petteway, 131 Fla. 516, 179 So. 666 (1938); State ex rel. Buckner v. Culbreath, 147 Fla. 560, 3 So.2d 380 (1941); 43 C.J.S. Injunctions § 224, p. 964.
Under these authorities and these circumstances the Association has no standing to attack the injunction, because of their failure to invoke the judicial process prior to the violations.
The Association further complains the injunction was issued even though the work stoppage produced neither violence or a threat of violence. This case involves the right of public employees to strike in the absence of statutory authority. There are a number of factual differences between employment in the public and private sectors which furnish reasonable justification for different treatment in considering the right to strike. For example, the necessity for preventing goods or services being priced out of the market may have a deterrent effect upon collective bargaining negotiations in the private sector, whereas, in the public sector the market place has no such restraining effect upon the negotiations and the sole constraint in terms of the negotiations is to be found in the budget allocation made by responsible legislators or other public agencies.
The orderly functioning of our democratic form of representative government and the preservation of the right of our representatives to make budgetary allocations, free from the compulsion of crippling strikes, require the regulation of strikes by public employees whereas there is no similar countervailing reason for prohibition of strikes in the private sector.
Public employment does not vest in such employees any fixed or permanent rights of employment. As individuals or in groups public employees may discontinue their employment, but they should not be allowed to use this as a screen to effect a work stoppage and engage in a conspiracy to secure higher wages or other benefits. To hold otherwise would result in public agencies being powerless to render public service and to effectively administer public affairs. The public would thereby be deprived of its right to efficient government. For example, if the members of a fire department *289 or of a police department collectively refused to continue to serve except upon conditions insisted upon by them, unless their employer supinely yielded, the public, subject to taxation therefor, would be deprived of fire or police protection. The right or power to exercise essential governmental affairs would be nullified.
In Pinellas County Classroom Teachers' Association v. Board of Public Instruction of Pinellas County, 214 So.2d 34 (Fla. 1968), this Court held that, in the absence of specific statutory authority, the teachers as employees of the government had no right to strike in order to coerce a change in compensation or conditions of employment.
The temporary injunction was appropriate even in the absence of any showing of violence or a threat of violence.
Inherent in this Court's order of remand on the prior appeal (217 So.2d 293) was a finding of this Court that the trial court had jurisdiction to enter the temporary injunction and that the injunction was properly entered. The earlier decision has become "the law of the case" and questions so settled on the earlier appeal are no longer open to question on a subsequent appeal. Rogers v. State ex rel. Board of Public Instruction, 156 Fla. 161, 23 So.2d 154 (1945); Ferguson v. Brogan, 111 Fla. 224, 149 So. 772 (1933); Sanders v. State ex rel. D'Alemberti, 82 Fla. 498, 90 So. 455 (1921).
The order of the lower court is
Affirmed.
ROBERTS, DREW and BOYD, JJ., concur.
ERVIN, C.J., concurs specially with opinion.
ERVIN, Chief Justice (concurring specially):
I agree to the judgment herein because the law of the case was made in Dade County Classroom Teachers' Association, Inc. v. Rubin (Fla. 1968), 217 So.2d 293, and the only issue remaining was whether the Circuit Judge should exercise his discretion to order a jury trial concerning contempt of the ex parte February 23, 1968 injunction order. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325, does not under the present circumstances benefit the Association's challenge to the February 23, 1968, injunctive order because no timely judicial challenge of this order was attempted. See Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210, 1219 (1967).
ROBERTS, DREW and BOYD, JJ., concur.