852 So.2d 277 (2003)
Ronald G. WENDEL, Appellant,
v.
Cindy H. WENDEL, Appellee.
Nos. 2D01-292, 2D02-2301.
District Court of Appeal of Florida, Second District.
June 27, 2003.
Rehearing Denied August 14, 2003.
*279 Karol K. Williams of Karol K. Williams, P.A., Tampa, for Appellant.
Ralph L. Gonzalez of The Yerrid Law Firm, Tampa, for Appellee.
VILLANTI, Judge.
Ronald G. Wendel (the Former Husband) appeals two orders arising from postjudgment litigation regarding the dissolution of the Former Husband's marriage to Cindy H. Wendel (the Former Wife). We reverse both orders and remand for further proceedings.
The Former Husband and the Former Wife were divorced in 1994 pursuant to a final judgment of dissolution of marriage. The final judgment incorporated the parties' marital settlement agreement (MSA). Pursuant to the terms of the MSA, the Former Husband had primary residential custody of the parties' two minor daughters, and the Former Wife paid child support based on the statutory guidelines amount less forty percent.[1]
In addition to the child custody and child support provisions, the M.S.A. contained two provisions dealing with enforcement and modification actions. Paragraph XIV of the M.S.A. provided:
XIV. MEDIATION OF DISPUTES. Any disagreement between the parties respecting any decision affecting the children or about the interpretation of this agreement or about the modification of this agreement will be resolved by mediation before taking legal action. Expenses for such mediation or legal action shall be shared equally by the parties.
Paragraph XV of the M.S.A. provided:
XV. MISCELLANEOUS

....
C. Should either party employ an attorney or attorneys to enforce any of the provisions hereof, or to protect its interest in any matter arising under this agreement, or to recover damages for the breach of this agreement, the party prevailing shall be entitled to recover from the other party, all reasonable costs, charges and expenses, including attorney's fees and costs, extended or incurred in connection therewith including through any appeal.
In 1998, the Former Husband filed a motion for contempt against the Former Wife based on her alleged failure to pay child support as agreed. The Former Husband's motion sought $27,300 in child support arrearages. In response to this motion, the Former Wife filed a petition seeking modification of child custody and guidelines child support from the Former Husband. The Former Husband then filed a counterpetition for modification of child support. In their respective petitions, both parties sought an award of attorney's fees. After an evidentiary hearing, the trial court granted the Former Wife's petition for modification of child custody and transferred primary residential custody of the two children to the Former Wife. The trial court also imputed income to the Former Husband and calculated his child support obligation based on that imputed income. Finally, the trial court denied the Former Husband's motion *280 for contempt but awarded him $14,567 in past due child support.
The Former Husband appealed the trial court's order. Both parties sought attorney's fees on appeal pursuant to the terms of the MSA. This court affirmed the change in residential custody and the award of past due child support. Wendel v. Wendel, 805 So.2d 913 (Fla. 2d DCA 2001) (Wendel I). However, this court reversed the imputation of income to the Former Husband, finding that the evidence did not support the amount of income imputed. This court remanded the case to the trial court for a new hearing on the Former Husband's child support obligation. Addressing the attorney's fee motions, this court awarded the Former Husband attorney's fees as the prevailing party on the issue of child support. This court also awarded the Former Wife attorney's fees as the prevailing party on the issue of child custody.
While Wendel I was pending in this court, the trial court held a hearing on the parties' claims for attorney's fees incurred in obtaining the child custody and support ruling that was then on appeal. At the hearing, the Former Husband argued that his action for past due child support was an enforcement action subject to paragraph XV of the MSA, that he was the prevailing party on that issue, and that he was entitled to an award of his attorney's fees for litigating the child support issue. He also argued that the Former Wife's child custody petition was a modification action subject to paragraph XIV and that the parties should therefore share the attorney's fees for that action. In contrast, the Former Wife argued that both actions were enforcement actions subject to paragraph XV. She argued that she had prevailed on the child custody issues and that the Former Husband had not prevailed to any significant degree on the child support issue. Therefore, the Former Wife argued that she was entitled to an award of the entire amount of her attorney's fees as the prevailing party and that the Former Husband was entitled to no fee award. The trial court agreed with the Former Wife, awarding her the full amount of her attorney's fees and denying the Former Husband's motion for fees. In case number 2D01-292, the Former Husband appeals this order on attorney's fees.
Following this court's issuance of mandate in Wendel I, the Former Wife scheduled a new evidentiary hearing on the issue of child support and imputation of income to the Former Husband. At the hearing, the Former Wife presented the testimony of her economic expert, Dr. Mellish. Dr. Mellish testified that a reasonable amount of income to be imputed to the Former Husband would be $120,000 to $150,000 based on the Former Husband's age, legal education, and employment experience. Dr. Mellish based his opinion on job salary information that he had obtained from Internet research and other sources addressing Tampa Bay area earnings and job openings. Dr. Mellish admitted that he did not contact any of the employers he identified to determine whether they would be interested in hiring the Former Husband, and he offered no testimony regarding the salaries for the Internet job advertisements he located.
The Former Husband testified that he had earned $65,000 in 1994 as a lawyer with the Tew Zinober law firm but that the firm unilaterally reduced his salary to $50,000 in 1995. The Former Husband testified that he voluntarily left Tew Zinober in 1995 to take a better paying position with Raymond James. He was subsequently asked to leave his job with Raymond James, and he was terminated from a management level position with a subsequent employer due to that company's *281 poor financial condition. He testified that he entered the real estate sales field in 2000 because he could not find other employment and felt that he would have more control over his continuing employment in that field. He testified that he has continually tried to obtain better paying jobs, including applying for attorney positions, banking positions, human resources positions, and customer relations positions. He sent out sixty to eighty resumes in 2001 without receiving a single response. The Former Husband admitted that his income had declined since 1995 but testified that it was starting to come back up from a low of $400 in 2000his first year in real estate salesto a net of $18,671 in 2001.
As to the amount of child support, the Former Husband argued that he should be entitled to the same forty percent reduction from the child support guidelines amount that the Former Wife had been enjoying since 1994. The Former Wife argued that the Former Husband should not be entitled to this reduction. She sought the full guidelines amount based on the income imputed to the Former Husband as well as the five percent differential allowed by the child support statute.
After considering this evidence, the trial court imputed $65,000 annual income to the Former Husband based on its finding that he "has the earning capacity at least equal to that which he had been earning at the Tew, Zinober law firm, which employment he voluntarily left to find a better job." The trial court refused the Former Husband's request to decrease the guidelines child support amount by forty percent because he spent "just less than 40% of the overnights" with his children. Finally, the trial court awarded collateral relief by requiring each party to pay fifty percent of the uninsured medical expenses, changing the parties' IRS exemptions retroactive to March 2000, and requiring the Former Husband to maintain $50,000 in life insurance coverage as security for his child support obligation. In case number 2D02-2301, the Former Husband appeals this order.

ATTORNEY'S FEE ORDERCASE NUMBER 2D01-292
In the appeal of the attorney's fee order, the Former Husband argues that the trial court erred in interpreting and applying paragraphs XIV and XV of the MSA. The Former Husband contends that there are two attorney's fee provisions in the MSAparagraph XIV which requires the parties to split fees in modification actions and paragraph XV which awards fees to the prevailing party in enforcement actions. He argues that the trial court erred in refusing to award prevailing party attorney's fees to him under paragraph XV for his child support enforcement action. He also argues that the trial court erred in awarding the Former Wife her attorney's fees as the prevailing party because her action was a modification action subject to paragraph XIV and so was subject to the fee-sharing provision of that paragraph.
The Former Wife contends that paragraph XIV does not include a provision for attorney's fees, and thus the only attorney fee provision in the M.S.A. is paragraph XV. She argues that the trial court properly awarded her attorney's fees because she was the prevailing party on the majority of the issues in the underlying litigation. While we agree with the Former Wife's interpretation of paragraph XIV, we disagree with the trial court's application of paragraph XV to the facts of this case.
Paragraph XIV of the M.S.A. provides, in pertinent part, "Expenses for such mediation or legal action shall be shared equally by the parties." There is no reference to attorney's fees anywhere in paragraph *282 XIV. Thus, simply from the face of the provision, the trial court did not err in rejecting the Former Husband's argument that paragraph XIV controlled the issue of attorney's fees in the modification action.
In an effort to avoid the plain language of paragraph XIV, the Former Husband argues that the term "expenses" should be interpreted to include attorney's fees. This argument has no merit for two reasons. First, contractual provisions concerning attorney's fees must be strictly construed. See Pici v. First Union Nat'l Bank of Fla., 705 So.2d 50, 51 (Fla. 2d DCA 1997); Venetian Cove Club, Inc. v. Venetian Bay Developers, Inc., 411 So.2d 1323, 1324 (Fla. 2d DCA 1982). Here, a strict construction of paragraph XIV precludes any award of attorney's fees because fees are not even mentioned in the paragraph.
Second, like the term "costs," the term "expenses" is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees. Cf. Rose Printing Co. v. Wilson, 602 So.2d 600, 603 (Fla. 1st DCA 1992) ("Although ... the term `costs' is not generally understood to include such [attorney's] fees, it has long been clear that when a statute or contractual agreement defines costs to include attorney's fees, the fees should be taxed just like other costs ....") (citation omitted); see also O.A.G. Corp. v. Britamco Underwriters, Inc., 707 So.2d 785 (Fla. 3d DCA 1998) (holding that the term "costs" is not generally understood to include attorney's fees absent an express contractual provision), abrogated on other grounds, Caufield v. Cantele, 837 So.2d 371 (Fla.2002); Zosman v. Schiffer/Taxis, Inc., 697 So.2d 1018 (Fla. 3d DCA 1997) (holding that "costs" do not usually include attorney's fees).
To avoid the general rule, the Former Husband argues that the last sentence of paragraph XV(C) defines "expenses" to include attorney's fees. While the last sentence of paragraph XV(C) certainly clarifies that the parties meant to include attorney's fees in that paragraph, it cannot be construed as a definition of "expenses" that should be applied across the entire MSA, and there is nothing to indicate that the parties intended the definition in paragraph XV(C) to be incorporated into paragraph XIV. If the parties intended to allow for the recovery of attorney's fees under paragraph XIV, they would have included the same language in paragraph XIV that was included in paragraph XV. The fact that attorney's fees are specifically mentioned in paragraph XV but omitted in paragraph XIV militates against any finding that paragraph XIV was intended to include attorney's fees. Therefore, we decline the Former Husband's invitation to read a provision for attorney's fees into the term "expenses."
Because paragraph XIV does not specifically provide for the recovery of attorney's fees, the only attorney's fees provision that is available to the parties is the prevailing party fee provision of paragraph XV. Accordingly, the trial court did not err in awarding attorney's fees on a prevailing party basis. However, the trial court did err when it applied this provision to the underlying judgment.
In the order awarding attorney's fees, the trial court awarded the Former Wife all of her fees, finding that she was the prevailing party on all of the significant issues in the underlying litigation. The trial court refused to award the Former Husband any of his attorney's fees, finding that he was not the prevailing party because he was awarded only half of the amount of past due child support that he sought. The Former Husband contends that this was error, pointing out that he *283 obtained significant relief on the child support issue. He also contends that the Former Wife did not prevail on all of the issues she raised, and therefore she should not have received all of her attorney's fees.
Resolution of this issue is controlled by this court's ruling on attorney's fees in Wendel I. Under the law of the case doctrine, questions of law that have actually been decided on appeal must govern the case in the same court and in the trial court through all subsequent stages of the proceedings. Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001); Dade County Classroom Teachers' Ass'n v. Rubin, 238 So.2d 284, 289 (Fla.1970); Dicks ex rel. Montgomery v. Jenne, 740 So.2d 576, 577 (Fla. 4th DCA 1999). This includes questions of law that were implicitly addressed or necessarily considered. Juliano, 801 So.2d at 106; Rubin, 238 So.2d at 289; Dicks, 740 So.2d at 578.
In this case, this court "necessarily considered" the issue of the interpretation and application of paragraph XV when this court entered its orders on appellate attorney's fees in Wendel I. In Wendel I, this court awarded appellate fees to the Former Husband as the prevailing party on the child support issues and to the Former Wife as the prevailing party on the child custody issue. While the appellate fee orders do not contain that panel's reasoning for these awards, this court "necessarily considered" and apparently rejected the Former Wife's argument that the Former Husband did not prevail on any of the issues in the underlying litigation.
While the trial court did not have the benefit of this court's rulings on appellate fees when it entered the attorney's fee order currently on appeal, this court's rulings have now become the law of the case on this issue. Thus, the Former Husband is entitled to an award of attorney's fees as the prevailing party on the child support issues. The Former Wife is entitled to an award of attorney's fees as the prevailing party on the child custody issues. Accordingly, we reverse the judgment for attorney's fees and remand for further proceedings on this issue.

CHILD SUPPORT ORDERCASE NUMBER 2D02-2301
As to the post-Wendel I child support order, the Former Husband contends that the trial court erred in imputing $65,000 in income to him for purposes of calculating his child support obligation. We agree.
Section 61.30(2)(b), Florida Statutes (2001), requires the trial court to impute income to an unemployed or underemployed parent "when such employment or underemployment is found to be voluntary on that parent's part." This requires a finding that the parent is capable of earning more by the use of his or her best efforts. Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997); Gildea v. Gildea, 593 So.2d 1212, 1213 (Fla. 2d DCA 1992); Cushman v. Cushman, 585 So.2d 485, 486 (Fla. 2d DCA 1991). Implicit in this finding is a determination that the parent is not currently using his or her best efforts to obtain employment. Cushman, 585 So.2d at 486; Greene v. Greene, 547 So.2d 1302 (Fla. 2d DCA 1989). The trial court's finding that the parent is underemployed must be based on evidence presented at the hearing.
Here, the trial court's finding that the Former Husband was voluntarily underemployed was not supported by the evidence presented at the hearing. The evidence established that the Former Husband was employed by Tew Zinober at a salary of $65,000 in 1994. In 1995, his salary was unilaterally reduced by the firm to $50,000. The Former Husband then secured a higher paying position *284 with Raymond James and left Tew Zinober for that position. However, the Former Husband was later fired from that job and downsized out of a subsequent job. Since that time, the Former Husband has diligently sought work in the banking, legal, and financial sectors. He has now obtained a position in real estate sales, and his income has begun to increase steadily; however, his most recent earnings are only $20,000 per year. The Former Wife presented absolutely no evidence to establish that the situation was other than as testified to by the Former Husband. While the Former Wife argued to the trial court that the Former Husband had made these job changes in an effort to avoid his child support obligations, these job changes occurred when the Former Husband had residential custody of the children and was receiving, not paying, child support. Thus, the trial court's finding that the Former Husband is voluntarily underemployed is not supported by any evidence in the record. Without any evidence to support this finding, the trial court had no basis upon which to impute income to the Former Husband. Cf. Gildea, 593 So.2d at 1213 (holding that it was error to impute income to former husband who had been involuntarily terminated from his last job, who had been seeking reemployment, but who had not been hired despite various interviews); Lee v. Lee, 751 So.2d 741, 744 (Fla. 1st DCA 2000) (reversing child support award based on imputed income because the evidence showed that the former husband had been fired from his last job and had been unsuccessful in obtaining employment despite various interviews).
In addition, if the trial court decides to impute income, it must consider the parent's "recent work history, occupational qualifications, and prevailing earnings level in the community." § 61.30(2)(b), Fla. Stat. (2001); see also Cushman, 585 So.2d at 486. It is error for a trial court to use outdated income figures when determining what level of income to impute to a parent. See Mitchell v. Mitchell, 841 So.2d 564 (Fla. 2d DCA 2003); Hanley v. Hanley, 734 So.2d 529 (Fla. 4th DCA 1999). Here, the trial court used the Former Husband's gross income from 1994 eight years prior to the hearing. Clearly, it was error to use this outdated figure.
Further, while the Former Wife did present evidence of the prevailing earnings level in the community, she did not present any evidence that there were positions available at that earnings level or that the Former Husband was qualified for any available positions. Dr. Mellish testified that the Former Husband should be able to earn $120,000 per year based on his experience and training as an attorney. Dr. Mellish then testified that there were "numerous job openings" in the Tampa area for attorneys. However, Dr. Mellish did not testify that any of those "numerous job openings" were seeking someone of the Former Husband's age, experience, and training, whether any of those "numerous job openings" were paying $120,000 (or $65,000 for that matter), or whether the Former Husband was qualified for any of the "numerous job openings." In the absence of some evidence establishing that there were legal positions available seeking someone of the Former Husband's age, experience, and training and paying $65,000 per year, there was insufficient evidence to support the trial court's imputation of income to the Former Husband. Cf. Iglesias v. Iglesias, 711 So.2d 1316 (Fla. 2d DCA 1998) (holding that it was error to impute income to former husband based on roofing jobs listed in newspaper when there was no evidence to establish that any of the jobs were actually available *285 to the former husband or what the specific rate of pay would be).
Moreover, there is no evidence in the record that would support the amount of income the trial court imputed to the Former Husband. Dr. Mellish testified that the Former Husband should be able to earn $120,000 based on his experience and training. The Former Husband testified that he was unable to get a job in his field and that he was currently earning approximately $20,000 as a real estate salesperson. No one testified that $65,000 was a reasonable amount of income to impute to the Former Husband. Section 61.30(2)(b) requires the trial court to consider evidence of recent work history, occupational qualifications, and the prevailing earnings level in the community. The trial court is not at liberty to simply select an income amount it believes to be reasonable when that amount is not based on evidence presented by the parties at an evidentiary hearing.
Because the trial court's finding that the Former Husband was voluntarily underemployed was not based on substantial, competent evidence and because there was no evidence that any of the "numerous job openings" testified to by Dr. Mellish were actually available to the Former Husband, the trial court erred in imputing income to him. Accordingly, we reverse the child support awarded based on the imputed income and remand for the trial court to calculate child support based on the Former Husband's current income and employment. Because the Former Husband's income as a real estate salesman appears to be steadily increasing, the trial court should also reserve jurisdiction to consider any future motions based on changes in the Former Husband's income level. See Ritter, 690 So.2d at 1375; Gildea, 593 So.2d at 1213.

COLLATERAL RELIEFCASE NUMBER 2D02-2301
Because we are remanding for a new hearing on child support, we address two other issues raised by the Former Husband. First, we reject the Former Husband's contention that the trial court is required by the M.S.A. to give him a forty percent reduction from the amount of child support due pursuant to the statutory child support guidelines. Child support is a right belonging to the child. Fox v. Haislett, 388 So.2d 1261, 1266 (Fla. 2d DCA 1980) (quoting Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979)). Parents may not waive or contract away a child's right to child support. Gammon v. Cobb, 335 So.2d 261, 266-67 (Fla.1976); Wilkes v. Wilkes, 768 So.2d 1150, 1151 (Fla. 2d DCA 2000); Fox, 388 So.2d at 1266. This does not prevent the parents from making agreements concerning child support as long as the agreements serve the best interests of the child. Fox, 388 So.2d at 1266; Lester v. Lester, 736 So.2d 1257, 1259 (Fla. 4th DCA 1999); Brock v. Hudson, 494 So.2d 285, 287 (Fla. 1st DCA 1986). However, if the parents make such an agreement, it will be recognized by the court only if the best interests of the child are fully served by the terms of the agreement. Fox, 388 So.2d at 1266; Lester, 736 So.2d at 1259. Thus, the trial court has an independent obligation to determine whether the child's best interests are served by the parents' agreement concerning their child support obligations.
When the M.S.A. was incorporated into the final judgment of dissolution in 1994, the trial court apparently determined that the forty percent reduction in the Former Wife's child support obligation was in the best interests of the children. However, that nine-year-old agreement between the Former Husband and the Former Wife does not relieve the current trial court of *286 its obligation to determine whether the child's best interests are now served by allowing that same reduction in the Former Husband's child support obligation.[2] Therefore, on remand, the trial court is not required to reduce the guidelines child support obligation by forty percent as provided by the MSA. Rather, the trial court must consider this agreement as but one factor in determining the amount of child support due from the Former Husband.
Finally, as the Former Wife conceded at oral argument, the trial court erred in ordering various collateral relief that neither party sought. A trial court may not modify any child support provisions sua sponte. Rather, proposed modifications must be properly pleaded and notice must be given so that the opposing party has an opportunity to respond. Manning v. Varges, 413 So.2d 116, 117 (Fla. 2d DCA 1982); Dey v. Dey, 838 So.2d 626 (Fla. 1st DCA 2003).
Here, the Former Wife did not file any motion or other pleading seeking a change in the allocation of uninsured medical bills, a change in the IRS dependency exemptions, or a change in the Former Husband's life insurance obligation. Further, no notice was given for any of these changes, and the Former Wife made no such arguments to the trial court. Therefore, the trial court erred in making these changes sua sponte.

CONCLUSION
We reverse the order awarding attorney's fees in case number 2D01-292 and the order concerning child support and collateral relief in case number 2D02-2301 and remand the cases to the trial court for further proceedings consistent with this opinion.
Reversed and remanded for further proceedings.
SALCINES and DAVIS, JJ., Concur.
NOTES
[1] The parties dispute the reason for incorporating this forty percent reduction into the MSA. Because our resolution of this case renders the reason for this reduction irrelevant, we decline to address this dispute.
[2] During the pendency of this case, the parties' older daughter turned eighteen. Therefore, the question on remand will be the proper amount of child support for one child only.