618 So.2d 299 (1993)
Leonard GREENBERG and Joanne Greenberg, his wife, Appellants,
v.
Tyler FONTAINE, Appellee.
No. 92-03351.
District Court of Appeal of Florida, Second District.
April 30, 1993.
Rehearing Denied May 26, 1993.
*300 Scot E. Samis of the Law Office of Charles W. Ehrlich, St. Petersburg, for appellants.
Guillermo A. Ruiz, P.A., St. Petersburg, for appellee.
PARKER, Judge.
Leonard and Joanne Greenberg (the Greenbergs) appeal the trial court's final judgment in which the trial court awarded Tyler Fontaine (Fontaine) a constructive trust on the Greenberg's homestead property. Because the record does not support any fraudulent or egregious conduct on the part of the Greenbergs, we reverse.
The Greenbergs owned and operated Starkey Road Auto Parts, Inc., an auto salvage business. Their son, Michael, was employed there as a general manager. Michael also operated numerous businesses on the side including the buying and selling of automobiles and boats. In 1988 the Greenbergs made three loans from the business to Michael totaling $106,700. The Greenbergs introduced evidence of these loans in the form of three checks from Starkey Road Auto Parts, Inc., issued to Michael, each dated in February 1988 for $30,000, $42,700, and $34,000. Mrs. Greenberg testified that when Michael asked for the money, she allowed him to write the checks on the Starkey Road account, and then she informed the accountant of the transaction, intending that it be a personal loan. A promissory note was not signed because of the family relationship. The Greenbergs told Michael that he could repay the loans when they needed the money.
The basis of this lawsuit was a business deal that began in 1990 when Fontaine met with Michael to discuss a side deal involving the purchase of damaged cars to be resold for a profit. Michael explained that the cars were in Texas and that they could make at least $15,000 profit on the resale of the cars within two weeks if Fontaine and Michael would each put up half the money.
Another discussion took place between Michael and Fontaine in late May 1990, and they determined that Fontaine's contribution would be $150,000. The next day Michael called Fontaine and told him that he needed two cashier's checks and gave Fontaine the specific amounts. Two days later Fontaine met Michael at Starkey Road Auto Parts and gave him two cashier's checks. One check was for $100,610.65; the other one was for $49,389.35. Michael's explanation for requiring two checks was that the funds were going to two separate insurance agencies for the purchase of the damaged cars. In exchange for the checks, Michael gave Fontaine numerous bills of sales for the cars involved in the deal. Approximately two months after giving Michael the money, Fontaine had received only $18,000 in cash *301 from Michael. When Fontaine did not receive any further funds, he did an investigation which revealed that there were no automobiles.
In May 1990 the Greenbergs informed Michael that they needed $49,389.35 to close on a residence that they were purchasing. Michael gave Fontaine's cashier's check in the amount of $49,389.35 to his parents. Michael's parents told him that this amount would be deducted from the loans that the business had given him. This request was the first time the Greenbergs had requested a repayment on the loans. The Greenbergs furnished the cashier's check bearing Fontaine's name at the closing on the purchase of the residence.
In August 1990 the Greenbergs discovered that the son was in trouble due to numerous large loans and joint ventures he had undertaken without his parents' knowledge. It was not until then that the Greenbergs discovered the son's dealings with Fontaine. As a result of Michael's activities, the Greenbergs have become involved in numerous lawsuits, including this suit, because of the fraudulent activities on Michael's part involving forgeries of his parents' names on documents, failure to pay taxes, forged computer leases, and a variety of other charges involving usurious loans and thefts from Starkey Road Auto Parts, Inc.
Following a nonjury trial, the court issued a final judgment in favor of Fontaine. The court found that the funds Michael obtained from Fontaine were obtained by fraud, which was known by the Greenbergs. The court imposed a constructive trust on the Greenbergs' homestead property, which they had purchased with the cashier's check from Fontaine, granted a lien on the property in the principal sum of $49,389.35 plus interest at twelve percent for a total of $51,291.51, and ordered the homestead property to be sold within thirty days from the date of the final judgment if the Greenbergs failed to pay that amount. Additionally, the court awarded $10,000 to Fontaine for punitive damages.
Courts may impose equitable liens against homestead property only when the plaintiff can establish some fraudulent or otherwise egregious conduct on the part of the beneficiary of the homestead protection. Fishbein v. Palm Beach Sav. & Loan Ass'n, 585 So.2d 1052, 1055 (Fla. 4th DCA 1991), rev'd on other grounds, 619 So.2d 267 (Fla. 1993). See also Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946, 948 (Fla. 1988). Although the trial court found that the funds obtained from Fontaine were obtained by fraud, which was known by the Greenbergs, we conclude that the evidence provided at the trial does not support that finding. Fontaine testified that his dealings were entirely with Michael and that he never discussed any aspect of this venture with the Greenbergs. The Greenbergs both testified that they were unaware of any of Michael's fraudulent activities until August 1990, which was over two months after Fontaine delivered the cashier's checks to the son. Without evidence of fraud or egregious conduct on the part of the Greenbergs, we are compelled to reverse.
Reversed and remanded to the trial court to enter a judgment in favor of the Greenbergs.
RYDER, A.C.J., and PATTERSON, J., concur.