973 So.2d 580 (2008)
Allan Michael ROTH, Appellant/Cross-Appellee,
v.
Pamela Gertrude ROTH, Appellee/Cross-Appellee/Cross-Appellant.
No. 2D06-3360.
District Court of Appeal of Florida, Second District.
January 9, 2008.
*583 Timothy W. Weber and Stephen J. Wein of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg, for Appellant/Cross-Appellee.
David M. Wall, Clearwater, for Appellee/Cross-Appellant.
STRINGER, Judge.
Allan Michael Roth (the Husband) appeals from the amended final, judgment of dissolution of marriage to Pamela Gertrude Roth (the Wife), arguing that the trial court abused its discretion in fashioning its equitable distribution scheme and in imputing income for purposes of child support. He also appeals an order requiring him to pay portions of the Wife's attorney's fees and costs and an order holding him in contempt for failing to execute several documents. The Wife cross-appeals from the amended final judgment, arguing that the trial court erred by failing to award her alimony. We reverse the final judgment of dissolution of marriage with respect to the equitable distribution and child support provisions only and remand for further proceedings. Because of this ruling, we also, reverse the order on attorney's fees and remand for reconsideration. On the order finding the Husband in contempt, we affirm.

I. BACKGROUND FACTS
The parties were married on February 14, 1995, and the Husband filed his petition for dissolution on July 26, 2001. When the parties married, the Husband was a stockbroker. He owned a house before the marriage, and the Wife and her daughter from a previous marriage moved into the Husband's residence shortly before the marriage. The, Wife was employed when the parties first married; however, after the parties' first child was born, the Wife worked only sporadically, primarily as an independent contractor furnishing and decorating *584 corporate apartments. There is no dispute that the Husband handled all of the parties' financial affairs during the marriage.
During the marriage, the Husband worked for two different brokerage houses. However, in 2000 after the dot.com bubble burst, he began to shift his focus away from brokerage activities and toward insurance products. After September 11, 2001, he essentially ceased his brokerage activities and focused almost exclusively on insurance. The parties do not dispute that during the Husband's best year as a stockbroker he earned $104,000. However, during the pendency of the dissolution proceedings, the Husband averaged an income of approximately $60,000 per year from his insurance business.
In the amended final judgment of dissolution, the trial court found that the parties had $590,749 in marital assets. The trial court divided these assets essentially in half, thus awarding each party $295,379 in the equitable distribution scheme. However, because many of the assets included in the equitable distribution scheme had been dissipated during the dissolution proceedings, there were insufficient liquid assets available to the Husband for him to pay an equalizing payment as a lump sum to the Wife. Therefore, the trial court required the Husband to sign a promissory note for $295,379 in favor of the Wife, and the trial court secured this promissory note with a mortgage on the Husband's nonmarital residence. The trial court ordered the Husband to pay $1500 per month to the Wife for sixty months in partial satisfaction of the promissory note, with the remainder due in a balloon payment at the end of the sixty months. The trial court also imposed an equitable lien on the Husband's nonmarital residence in favor of the Wife. Nowhere in the amended final judgment did the trial court value or distribute the significant liabilities listed on the parties' financial affidavits.
In calculating the child support award, the trial court imputed $150,000 in annual income to the Husband and $12,000 in annual income to the Wife. Based on these figures, the trial court ordered the Husband to pay $2005.85 per month in child support to the Wife. In addition, based on this imputed income, the trial court found that the Husband had the ability to contribute to the Wife's attorney's fees, and it ordered the Husband to pay a total of $38,347 to the Wife's two attorneys at the rate of $800 per month plus interest.
Finally, the amended final judgment ordered the Husband to sign the promissory note and mortgage in favor of the Wife by June 23, 2006. When the Husband failed to do so, the, trial court held the Husband in contempt and ordered him jailed until he complied. The Husband now appeals all of these orders.

II. EQUITABLE DISTRIBUTION

Dissipation of Assets
The Husband's major argument concerning the equitable distribution scheme is that the trial court erred when it included assets in the scheme that had been dissipated during the course of the dissolution proceedings. Based on the evidence presented at the adjudicatory hearing, we agree.
As a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings. Cooper v. Cooper, 639 So.2d 153, 155 (Fla. 2d DCA 1994); Bush v. Bush, 824 So.2d 293, 294 (Fla. 4th DCA 2002); Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993). However, an exception to this general proposition exists when misconduct during the dissolution proceedings *585 results in the dissipation of a marital asset. In that case, the misconduct may serve as a basis for assigning the dissipated asset to the spending spouse when calculating equitable distribution. Levy v. Levy, 900 So.2d 737, 746 (Fla. 2d DCA 2005); Romano v. Romano, 632 So.2d 207, 210 (Fla. 4th DCA 1994).
When considering whether the dissipation of an asset resulted from misconduct, the question for the trial court is whether "one spouse use[d] marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Romano, 632 So.2d at 210 (quoting Gentile v. Gentile, 565 So.2d 820, 823 (Fla. 4th DCA 1990)). The misconduct necessary to support inclusion of dissipated assets in an equitable distribution scheme does not include mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves. Segall v. Segall, 708 So.2d 983, 986 (Fla. 4th DCA 1998). Instead, to include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct. Levy, 900 So.2d at 746 (reversing award of dissipated asset because the wife's testimony that she used the asset for attorney's fees and living expenses during the dissolution proceedings was unrebutted and the trial court did not find the wife guilty of misconduct); Cooper, 639 So.2d at 155 (reversing award of dissipated asset when the husband's testimony that he used the IRA funds to pay temporary support obligations and his own living expenses was unrebutted and there was no finding of misconduct); Bush, 824 So.2d at 294 (reversing award of dissipated asset when the evidence showed that the husband exercised his stock options to pay the parties' financial obligations during the dissolution proceedings); Knecht, 629 So.2d at 886 (reversing award of dissipated asset when no evidence contradicted the wife's testimony that she expended the funds in her IRA for support during the dissolution proceedings).
In the amended final judgment in this case, the trial court identified a $100,000 CD, $220,000 in a Mercantile Bank account, and a brokerage account as marital funds and found that the Husband "has given no explanation whatsoever, nor accounting for these sums." Based on this finding, the trial court included these dissipated assets in the equitable distribution scheme. This was error.
The Husband testified at the adjudicatory hearing that he had liquidated various bank accounts, CDs, and IRAs during the dissolution proceedings and had used the funds to pay his temporary support obligations to the Wife and their children and to pay his own living expenses. The record shows that during the five-year duration of the dissolution proceedings, the Husband earned approximately $60,000 per year. During this same time, he was obligated to pay all of the expenses for the marital residence, including two mortgages, the taxes, insurance, utilities, and maintenance. In addition, he was required to pay the Wife $200 per week in temporary support. The Husband testified that these court-ordered support payments totaled approximately $3500 per month. The Husband also testified, and the Wife did not dispute, that he paid the vast majority of the children's expenses during this time. Moreover, the Husband maintained a separate residence during these proceedings. The Husband explicitly testified that the funds in the brokerage account had been reduced to nothing after the events of *586 September 11, 2001, and that the CD and other accounts were liquidated to pay living expenses for both himself and the Wife and children during the dissolution proceedings. While there was some evidence that the Husband delayed making certain payments at certain times, the Wife presented no evidence to show that the Husband expended the funds from these dissipated assets on anything other than his court-ordered support obligations and the other needs of his family.
Moreover, when the Husband attempted to provide a more detailed accounting of the use of these funds, the trial court interrupted and asked, "Does it suffice to say that he spent the money and he spent it on the business, the marital home, and residence without going into every withdrawal and expenditure?" Thus; the trial court itself precluded the Husband from presenting the detailed evidence that the trial court later faulted the Husband for not presenting. In light of the testimony presented at the hearing, the trial court's finding that the Husband had provided no explanation for the use of these monies is not supported by the evidence in the record.
Because there is uncontradicted evidence in the record that the dissipated funds were used to pay marital expenses during the dissolution proceedings and because there is no evidence that the Husband engaged in misconduct in expending the funds, the trial court abused its discretion in including these dissipated funds in the equitable distribution scheme. While the Wife is correct that the trial court could have chosen to disbelieve the Husband's testimony concerning how he spent the funds, the trial court cannot make a finding that the Husband intentionally dissipated assets in the absence of some evidence of such conduct. Thus, on remand, the trial court must revisit the equitable distribution scheme without including these assets.
Our holding on the dissipation issue moots the Husband's arguments that certain CDs should not have been classified as marital, that the trial court double-counted certain assets, and that the trial court erred by failing to account for the penalties and interest incurred when the Husband liquidated his IRA. Because the only evidence is that all of these assets were liquidated to pay marital expenses, none of these assets should be included in the equitable distribution scheme on remand.

Distribution of Liabilities
While not raised as an issue on appeal by either party, we note that nowhere in the amended final judgment does the trial court identify the significant liabilities listed on the parties' financial affidavits as either marital or nonmarital nor does the amended final judgment distribute these liabilities. Section 61.075(3), Florida Statutes (2006), requires the trial court to make written findings clearly identifying the marital and nonmarital assets and liabilities and clearly identifying which spouse is responsible for which liability. Because the trial court will be reconsidering the equitable distribution scheme on remand, we remind the trial court that it must address these liabilities in the new scheme.

Equitable Lien
The Husband also contends that the trial court abused its discretion by securing payment of the equitable distribution award to the Wife through a lien on the Husband's nonmarital residence. Because we have reversed the equitable distribution award, we must, by necessity, reverse the imposition of the equitable lien. We write to point out that while the trial court may again impose a lien on remand, the *587 amount of that lien is limited to the Wife's marital interest in the residence:
The parties did not dispute at the adjudicatory hearing that the residence in which the parties lived during their marriage belonged to the Husband before the marriage and so was his nonmarital property. The parties also did not dispute that the residence qualified as the Husband's homestead. The Husband admitted at the adjudicatory hearing that the Wife had a marital interest in that residence of $91,000 based on marital funds expended on the residence during the marriage.
In the amended final judgment, the trial court properly included the Wife's marital interest in the residence in its equitable distribution scheme. The trial court also chose to secure the Wife's equitable distribution award by a lien on the residence. The Husband admits that the trial court could properly impose an equitable lien on his nonmarital homestead to the extent of the Wife's marital interest in the residence. See Wallace v. Wallace, 922 So.2d 1008 (Fla. 1st DCA 2006) (noting that an equitable lien for wife's special equity in husband's nonmarital residence was not a violation of the homestead protections of the Florida Constitution); Hieke v. Hieke, 782 So.2d 443 (Fla. 4th DCA 2001) (same). However, he argues that the trial court abused its discretion in imposing an equitable lien on his nonmarital homestead for the remaining $204,379 of the equitable distribution award. We agree.
Article X, Section 4(a) of the Florida Constitution provides that a person's homestead "shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty. . . ." Despite this plain language, the courts have crafted two exceptions to the general rule that homesteads are exempt from forced liens. A court can impose an equitable lien on homestead property when there is evidence of fraud or material misrepresentation. Bessemer v. Gersten, 381 So.2d 1344, 1347 n. 1 (Fla. 1980); Greenberg v. Fontaine, 618 So.2d 299, 301 (Fla. 2d DCA 1993); Sell v. Sell, 949 So.2d 1108, 1112 (Fla. 3d DCA 2007) (noting that an equitable lien can be placed on and enforced against homestead property when "a plaintiff can establish fraud or `reprehensible conduct' on the part of the beneficiary of the constitutional protection"). In addition, a trial court can impose an equitable lien on homestead property to secure the payment of alimony and child support. Anderson v. Anderson, 44 So.2d 652, 654-55 (Fla.1950); Dep't of Revenue v. Bush, 838 So.2d 653, 655 (Fla. 2d DCA 2003) (noting that the homestead exemption is not generally construed to defeat obligations for family support); Brose v. Brose, 750 So.2d 717, 719 (Fla. 2d DCA 2000).
Here, the equitable lien on the Husband's nonmarital homestead was not imposed to secure an award of alimony or child support. Further, the trial court made no finding, nor would the evidence have supported a finding, that the Husband had engaged in reprehensible conduct. Neither of the parties has cited to any case that permits a trial court to impose an equitable lien on a nonmarital homestead for amounts awarded as equitable distribution in the absence of fraud, and this court has been unable to find any such case. Thus, there appears to be no basis upon which the trial court could impose an equitable lien on the Husband's nonmarital homestead for the amount of the equitable distribution award in excess of the Wife's marital interest in that homestead. *588 Accordingly, on remand, if the trial court again chooses to secure the Wife's equitable distribution award through an equitable lien on the Husband's nonmarital homestead, it may do so only to the extent of the Wife's marital interest in that property.

Reasonable Rental Value
The Husband next contends that the trial court abused its discretion by awarding the Wife exclusive possession of his nonmarital residence and by refusing to charge her with the reasonable rental value of the residence during her period of occupancy. Under the specific facts of this case, we disagree.
In the amended final judgment, the trial court awarded the Wife and the parties' children exclusive possession of the Husband's nonmarital residence for five months. The trial court conditioned the Wife's vacation of the residence on the Husband's timely payment of his equitable distribution obligations, his child support obligations, and certain litigation costs. The trial court ordered the Wife to pay the first mortgage and all utilities during the time that she was in exclusive possession of the residence. It is apparent from the amended final judgment and the trial court's oral rulings that the trial court intended this five-month period to be an opportunity for the Wife to find suitable alternate housing for herself and the parties' children and to actually accomplish the move.
As the Husband correctly points out, a court may award exclusive use and possession of nonmarital property to a custodial parent incident to an award of child support only if it finds that the noncustodial al parent's income is insufficient to meet the child support obligation. Mitchell v. Mitchell, 841 So.2d 564, 570 (Fla. 2d DCA 2003); Dyer v. Dyer, 658 So.2d 148, 149-50 (Fla. 4th DCA 1995). If the court elects to award the custodial parent exclusive possession, it must determine the fair rental value of the residence and include it in the custodial parent's income for purposes of determining the amount of child support to be paid. Mitchell, 841 So.2d at 571; Dyer, 658 So.2d at 150.
Here, there is no dispute that the trial court did not find that the Husband's income was insufficient to meet his child support obligation. Further, the trial court did not include the rental value of the residence in the Wife's income when it determined her child support obligation. Thus, it would initially appear that this portion of the final judgment would have to be reversed.
However, given the limited duration of the exclusive possession in this case, the trial court did not abuse its discretion. The trial court awarded the Wife only five months' exclusive possession. This was time for the Wife to locate another suitable residence for herself and the children and to move. Because the Wife had no income and was not awarded any liquid assets in the, equitable distribution scheme, the trial court anticipated that the Wife would use the monthly equitable distribution and child support payments paid to her by the Husband to obtain a suitable residence. This intent would have been frustrated had the trial court reduced the child support payments to account for the rental value of the house. In addition, had the trial court reduced the child support payments, it would have also had to award the Wife a longer period of exclusive possession.
Moreover, the court did require the Wiferather than the Husbandto pay a large portion of the expenses for the nonmarital residence, including the first mortgage, during the period that she had exclusive *589 possession. In light of this, this court cannot say that the trial court abused its discretion in refusing to account for the reasonable rental value of the house. To charge the Wife with the rental value of the residence while also requiring her to pay the mortgage would have given the Husband a windfall and would have constituted an abuse of discretion.
The Husband's real complaint appears to be that the trial court conditioned the Wife's obligation to vacate the residence on his timely payment of his equitable distribution and child support payments. Should the Husband not make these payments in a timely fashion, the Wife may not have to vacate the residence in the short time provided by the court. However, the Husband has not challenged the trial court's authority to impose these conditions in this appeal. Therefore, because the trial court did not abuse its discretion in awarding the Wife a limited period of exclusive occupancy of the Husband's nonmarital residence, we affirm this portion of the amended final judgment.

Dischargability Finding
The Husband next contends that the trial court abused its discretion when it added a finding in the amended final judgment that its award of periodic payments to the Wife to satisfy the equitable distribution award was "in the nature of support" and that "same shall be non-dischargeable in any bankruptcy proceeding." This provision must be stricken for two reasons.
First, after analyzing the factors set forth in section 61.08, the trial court specifically denied the Wife's claim for alimony, finding that this was a short-term marriage, that the Wife was in generally good physical and emotional condition, and that the Wife had presented no testimony or other evidence concerning the need for alimony. Having denied the Wife's claim for alimony, the trial court cannot convert payments intended to satisfy its equitable distribution scheme into support payments.
Second, the provision concerning the dischargeability of the obligation in bankruptcy must be stricken for the reasons expressed in this court's recent decision in Meeks v. Meeks, 964 So.2d 185 (Fla. 2d DCA 2007). In Meeks, this court addressed a similar provision in a dissolution judgment. In striking the provision finding that a particular award was "not dischargeable in bankruptcy," this court stated:
The problem with the trial court's judgment is that it reached an issue of federal law that is not yet ripe for consideration. A state trial court is free to place language in a judgment to memorialize factual determinations or legal rulings on questions of state law that may later assist the bankruptcy court in deciding, as a matter of federal law, the dischargeability of obligations created by the judgment. However, the law does not allow a state court to decide the federal issue of discharge prior to the filing of any bankruptcy proceeding.
964 So.2d at 187 (internal citations and footnotes omitted).
Here, as in Meeks, the trial court purported to determine an issue of federal bankruptcy law that was not ripe for determination. While the Husband did file a bankruptcy petition, the issue of the dischargeability of any obligations was not reached. Further, the bankruptcy court lifted the automatic stay solely so the parties could have their respective motions for rehearing heard in the dissolution case. The bankruptcy court did not request that the trial court make any determinations of dischargeability, and it is clear from the transcript of the hearing that the bankruptcy court intended to make such determinations *590 itself once the dissolution proceedings were final. Thus, the trial court erred by including this provision in the amended final judgment, and it must be stricken on remand.

III. CHILD SUPPORT
The Husband next argues that the trial court erred in imputing $150,000 per year in income to him for purposes of calculating his child support obligations. We agree on this issue as well.
A court may impute income to a party who has no income or who is earning less than is available to him or her based on a showing that the party has the capacity to earn more by the use of his or her best efforts. Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d' DCA 1997); Cushman v. Cushman, 585 So.2d 485, 486 (Fla. 2d DCA 1991). When a court imputes income, it is finding that the party to whom the income is imputed has chosen to earn less than he or she is able to and that the party has the ability to remedy the situation. Cushman, 585 So.2d at 486. Before imputing income, the trial court must consider evidence concerning the party's recent work history, occupational qualifications, and the prevailing earnings in the industry in which the party works. Wendel v. Wendel, 852 So.2d 277, 284 (Fla. 2d DCA 2003). The decision to impute income and the determination of the amount of income to be imputed must be based on competent, substantial evidence presented at an evidentiary hearing. Wendel, 852 So.2d at 283; Ritter, 690 So.2d at 1374. Moreover, "`income may not be imputed at a level which the former spouse has never earned, absent special circumstances.'" Hinton v. Smith, 725 So.2d 1154, 1157 (Fla. 2d DCA 1998) (quoting Stein v. Stein, 701 So.2d 381, 381 (Fla. 4th DCA 1997)).
In this case, the record is completely devoid of any evidence that would permit the trial court to impute income to the Husband in the amount of $150,000 per year. The only evidence of the Husband's past earnings shows that, in his best year in 2000, he earned $104,000. Since that time, he has earned between 849,000 and $64,000 per year. Moreover, in the years prior to 2000, the Husband earned $53,417 (1999) and $91,744 (1998). In light of this record of the Husband's past earnings, there is no evidentiary basis for imputing $150,000 in annual income to the Husband. Further, the Wife made no attempt to establish any "special circumstances" that would permit the trial court to impute income at a level never earned by the Husband.
In this appeal, the Wife seems to assert that the trial court properly imputed this level of income to the Husband because he holds numerous securities licenses. However, this court has held that even expert testimony concerning the earnings levels for persons who hold a particular degree does not constitute evidence sufficient to impute that amount of income to a party. Wendel v. Wendel, 805 So.2d 913, 914 (Fla. 2d DCA 2001); Hinton, 725 So.2d at 1157. Given this case law, certainly the Wife's testimony that the Husband "should be able to earn more" is insufficient.
At oral argument, counsel for the Wife contended that the trial court was permitted to select an amount of imputed income based on, in essence, the trial court's "feel" for the case. Thus, counsel for the Wife argued that while $180,000 would have been too high and $120,000 would have been too low, the $150,000 chosen by the trial court was "just right." Unfortunately, this Goldilocks theory of imputed income is not supported by any Florida case law, which clearly holds that the trial court must base its decision to impute income on *591 evidence of the party's work history, occupational qualifications, and the prevailing earnings in the industry. Wendel, 852 So.2d at 283; Hinton, 725 So.2d at 1157. Here, the Wife presented no evidence to establish the prevailing earnings in the securities or financial fields nor did she present any evidence of the availability of jobs in that sector. While the Husband is now employed in the health and disability insurance field, the Wife also failed to present any evidence to establish the prevailing earnings in those fields.
Because there was absolutely no evidence in the record to support the trial court's finding that the Husband could reasonably be expected to earn $150,000 per year, we reverse the imputation of income and remand for further proceedings. On remand, the Wife should be permitted to present additional evidence on this issue should she wish to do so.

IV. ATTORNEY'S FEES
The Husband next argues that this court should reverse the award of attorney's fees and costs and remand for the, trial court to reconsider this order after it addresses the deficiencies in the amended final judgment. Because we are reversing the equitable distribution award and the imputation of income to the Husband, we also reverse the order on attorney's fees and remand for reconsideration in light of any changes made to the provisions of the amended final judgment.

V. CONTEMPT
Finally, the Husband contends that the trial court erred by using its contempt powers to enforce its equitable distribution scheme when the Husband failed to sign the mortgage and promissory note in favor of the Wife. We disagree.
In the amended final judgment, the trial court ordered the Husband to sign a mortgage on the nonmarital residence and a promissory note in favor of the Wife to secure her award of equitable distribution. The amended final judgment required these documents to be signed by a date certain. When the Husband refused to sign the documents, the Wife asked the trial court to find the Husband in civil contempt. After a hearing, the trial court did so. The trial court jailed the Husband, with the purge provision being that he sign the documents at issue. The Husband contends that this was an improper use of the court's contempt powers.
The Husband is correct that, as a general proposition, property division awards may not be enforced by contempt. See, e.g., Fisher v. Fisher, 787 So.2d 926, 930 (Fla. 2d DCA 2001); Montanez v. Montanez, 697 So.2d 184, 185 (Fla. 2d DCA 1997). The rationale behind this general rule is that property division awards are simply a debt owed between spouses, and the Florida Constitution bars imprisonment for debt. Burke v. Burke, 336 So.2d 1237, 1238 (Fla. 4th DCA 1976).
However, when the act at issue does not involve the payment of money, a trial court may enforce the property division award through contempt. For example, in Burke, the final judgment of dissolution ordered the husband to execute and deliver various documents necessary to release the wife's interest in a note and mortgage and to transfer certain securities to the wife. 336 So.2d at 1238. The trial court held the husband in contempt for failing to execute and deliver the documents. The Fourth District affirmed, noting that because the final judgment ordered the husband to perform certain acts and because those acts did not involve the payment of money, the husband's refusal to perform those acts could be punished by contempt. Id.
*592 Similarly, in Riley v. Riley, 509 So.2d 1366 (Fla. 5th DCA 1987), the final judgment of dissolution ordered the husband to name the wife as the beneficiary of a certain life insurance policy. When the husband failed to do so, the trial court held him in contempt. The Fifth District affirmed, noting that the provision at issue required the performance of an act rather than the payment of money and that the husband's refusal to perform the act could be punished by contempt. Id. at 1369.
Likewise, in Firestone v. Ferguson, 372 So.2d 490 (Fla. 3d DCA 1979), the final judgment of dissolution ordered the sale of certain marital real estate at a specific price. When a purchase offer was made at that price, the wife refused to sign the sales contract, and the trial court held her in contempt. The Third District affirmed because the provision of the final judgment at issue was one ordering her to perform an act rather than to pay money. Id. at 492.
Each of the above cases relied, at least in part, on Florida Rule of Civil Procedure 1.570(c)(2), which permits the court to enforce an order requiring the performance of an act through contempt. Florida Family Law Rule of Procedure 12.570 incorporates rule 1.570. Thus, the rules of procedure also support the proposition that a trial court may hold a spouse in contempt for failing to perform a specific act, such as signing a note or mortgage, that is required by the final judgment of dissolution.
Based on these authorities, we hold that the trial court did not err in holding the Husband in contempt in this case based on his refusal to sign the mortgage and promissory note. The trial court did not hold the Husband in contempt for failing to pay money, which would be improper. Rather, it held him in contempt for failing to perform an act which he was fully capable of performing. To hold otherwise would permit a party to simply disregard provisions of a final judgment that required that party to perform some act. We will not endorse such a position.
We do recognize that in LaRoche v. LaRoche, 662 So.2d 1018 (Fla. 5th DCA 1995), the Fifth District reversed an order finding the wife in contempt for her failure to give the husband a quitclaim deed to the marital residence. The Fifth District cited the general proposition that property awards are not punishable by contempt and noted that the husband could have filed an action for specific performance to compel the wife to sign the quitclaim deed. However, it its opinion in LaRoche, the Fifth District did not reference rule 1.570(c)(3) or any of the cases cited above, including its own earlier case in Riley. To the extent that our holding in this case appears to conflict with LaRoche, we certify conflict.

VI. ALIMONY
On cross-appeal, the Wife contends that the trial court erred by denying her request for alimony. We disagree for two, reasons.
First, while the Wife did seek an award of alimony in her cross-petition for dissolution, during the three-day dissolution hearing, she did not request alimony nor did she present any evidence whatsoever concerning her need for alimony. When a party fails to present any evidence or make any argument at a dissolution hearing in support of a request for alimony, the trial court is entitled to believe that the claim has been abandoned. See Moss v. Moss, 939 So.2d 159, 166 (Fla. 2d DCA 2006) (holding that the husband's failure to argue his entitlement to attorney's fees under a prenuptial agreement at a hearing held on the issue of entitlement to attorney's fees constituted an abandonment of that claim).
*593 Second, based on the evidence that was presented in support of the other issues, the trial court made specific findings concerning the factors included in section 61.80 and denied alimony based on those findings. The trial court found that this was a short-term marriage, that the Wife was physically and emotionally healthy, and that the Wife had presented no evidence concerning a need, for alimony. In light of these findings, we cannot say that the trial court abused its discretion in denying the Wife alimony.

VII. CONCLUSION
In conclusion, we reverse the trial court's equitable distribution scheme and remand for further proceedings. On remand, the trial court may not include the assets dissipated during the course of the dissolution proceedings in that scheme. In addition, the trial court must ensure that it properly considers and distributes the liabilities identified by the parties in their financial affidavits. The trial court may again impose an equitable lien on the Husband's nonmarital residence, but it must do so in accordance with the limits of Florida law. We also reverse the child support award and remand for recalculation based on the parties' incomes as supported by competent, substantial evidence. In addition, we reverse the order on attorney's fees and costs and remand for reconsideration in light of the new equitable distribution scheme and the parties' incomes as supported by competent, substantial evidence. In all other respects, we affirm.
Affirmed in part; reversed in part; and remanded for further proceedings.
WHATLEY and CASANUEVA, JJ., Concur.