NORTHCUTT, Judge.
Terry Zambuto challenges 'the alimony award and equitable distribution scheme prescribed in the judgment dissolving his marriage to Lisa Zambuto. We agree with his arguments in part, and we reverse for the trial court to make certain adjustments.
During the marriage, Mr. Zambuto earned a substantial income and Mrs. Zambuto stayed at home with three children. Mrs. Zambuto’s evidence established a level of need that resulted in a significant award of alimony. Mr. Zambu-to has not demonstrated an abuse of discretion in the trial court’s alimony award generally; the evidence supported the court’s findings regarding Mr. Zambuto’s income and Mrs. Zambuto’s financial needs. See, e.g., Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). But Mr. Zam-buto has shown error in the court’s failure to account for Mrs. Zambuto’s earning capacity, which would reduce the amount of alimony necessary to meet her needs.
In calculating alimony, the court may attribute to a party an earning capacity that is supported by the evidence. LaFlam v. LaFlam, 854 So.2d 809, 810 (Fla. 2d DCA 2003). Here, the testimony showed that Mrs. Zambuto has a college degree, was licensed as a certified nurse assistant, and operated a small home-based business. Mrs. Zambuto acknowledged that she could return to work full-time, and Mr. Zambuto presented a vocational expert who testified about Mrs. Zambuto’s earning ability and about various programs that would enable her to reenter the workforce. The court announced its intention to make an award of *1046 rehabilitative alimony and to charge Mrs. Zambuto with earnings based on a forty-hour work week. But the final judgment is silent on both points. This may have resulted from the parties’ indication to the court that they would provide it with updated information about a rehabilitation plan. Our record does not disclose what later transpired in that regard. Regardless, we reverse and remand for the court to address this issue, with leave to take additional evidence if necessary. See Nicholas v. Nicholas, 870 So.2d 245, 248 (Fla. 2d DCA 2004) (noting that remand for additional evidence “is appropriate in order to cure a deficiency that was not attributable to the trial judge, but to one or both of the parties” (citing Batson v. Batson, 821 So.2d 1141, 1143 (Fla. 5th DCA 2002) (Peterson, J., concurring))).
We also reverse a portion of the equitable distribution. The trial court assigned $90,000 to Mr. Zambuto for money he had spent during the marriage. This figure represented gambling losses over the last two years of the marriage. It is error to distribute dissipated funds to a party in the absence of misconduct. See Belford v. Belford, 51 So.3d 1259, 1260 (Fla. 2d DCA 2011). “Misconduct is not shown by ‘mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves.’ ” Id. (quoting Roth v. Roth, 973 So.2d 580, 585 (Fla. 2d DCA 2008)). “Rather, there must be a specific finding of intentional misconduct based on evidence showing that the marital funds were used for one party’s ‘own benefit and for a purpose unrelated to the marriage at. a time when the marriage is undergoing an irreconcilable breakdown.’ ” Id. (quoting Roth, 973 So.2d at 585).
Here, the gambling losses occurred while the marriage was intact, not while it was undergoing an irreconcilable breakdown. Mrs. Zambuto may well have disapproved of the extent of her husband’s gambling, but she also engaged in gambling activities. Moreover, Mr. Zambuto often gambled in the course of entertaining business clients, and as such the activity served a marital purpose. For these reasons, it was error to charge Mr. Zambuto’s share of the marital assets for the gambling losses. On remand, the court shall revisit the equitable distribution scheme and adjust it accordingly.
Reversed and remanded with directions.
DAVIS and BLACK, JJ., Concur.