DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TERRI JO HOEHN McKENZIE,**
Appellant,

v.

**HENRY GRACE McKENZIE, IV,**
Appellee.

No. 4D17-2413

[September 5, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 50-2016-DR-005315-XXXX-NB.

Peggy Rowe-Linn of Peggy Rowe-Linn, P.A., West Palm Beach, for appellant.

John D. Boykin of Ciklin Lubitz & O'Connell, West Palm Beach, for appellee.

CONNER, J.

Terri Jo Hoehn McKenzie ("the Former Wife") appeals the final judgment of dissolution of marriage and the trial court's order denying her motion for rehearing and motion to reopen the evidence based on a contention that Henry Grace McKenzie ("the Former Husband") engaged in fraud or conversion of funds. We determine the trial court erred by: (1) awarding a dissipated asset to the Former Wife in the equitable distribution of the parties' marital assets; (2) awarding child support using an incorrect amount for the Former Wife's income; (3) failing to correctly describe the Former Husband's pension plan in equitably distributing the Former Wife's marital interest in the plan; and (4) failing to rule on the parties' agreement regarding life insurance. We affirm without discussion the Former Wife's remaining arguments.

*Background*

The parties were married in 1992, after which two children were born, one of whom was still a minor at the time of the final dissolution hearing.

The Former Wife petitioned and the Former Husband counter-petitioned to dissolve the marriage in 2016. The final hearing was conducted in 2017.

*Appellate Analysis*

*The Error in Equitable Distribution of Marital Assets*

The Former Wife argues several reasons why the trial court erred in its equitable distribution of marital assets. We reject all of her arguments, except for the argument that the trial court awarded her "depleted" assets, referring to an amount of money that was in her bank accounts at the time the dissolution proceeding was filed, but had since been used by the time of the final hearing.

At the time the dissolution proceeding was filed, there was $13,275 in the Former Wife's savings account and $13,212 in her checking account. The Former Wife testified at trial that there was no cash left in either account as of the date of the trial, and at one point she specifically testified that a little over $6,000 of the money was used to pay her attorney's fees early on in the proceedings.

The Former Wife is correct that the trial court erred in including a dissipated sum of marital funds in the equitable distribution of marital assets without a specific finding of intentional misconduct.

> As a general rule, "it is error to include in the equitable distribution scheme assets or sums that have been diminished or depleted during the dissolution proceedings." *Tillman v. Altunay*, 44 So. 3d 1201, 1203 (Fla. 4th DCA 2010) (quoting *Bush v. Bush*, 824 So. 2d 293, 294 (Fla. 4th DCA 2002)). Only where there is "evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court . . . make[s] a specific finding that the dissipation resulted from intentional misconduct" can that dissipated asset be included within the equitable distribution. *Roth v. Roth*, 973 So. 2d 580, 585 (Fla. 2d DCA 2008). Intentional misconduct is demonstrated by evidence that the marital funds were used for one party's "own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *Id.* (quoting *Romano v. Romano*, 632 So. 2d 207, 210 (Fla. 4th DCA 1994)).

*Zvida v. Zvida*, 103 So. 3d 1052, 1055 (Fla. 4th DCA 2013) (alterations in original). The only testimony as to the use of those funds was by the Former Wife, who testified that she used a portion of the funds to pay part

2

of her attorney's fees. There was no evidence presented that she improperly dissipated the funds. Even if the trial court did not believe her testimony about using part of the funds to pay her attorney's fees, the trial court did not make any specific findings regarding any misconduct, nor would such a finding be supported by the record. Therefore, the trial court's ruling on this matter was error. In readjusting the equitable distribution of marital assets on remand, the trial court has the discretion to readjust the distribution of other assets in the original final judgment, if needed. *See Branch v. Branch,* 775 So. 2d 406, 408 (Fla. 1st DCA 2000) ("[S]ince our reversal of portions of the final judgment necessarily affects the overall plan for equitable distribution of the marital assets and liabilities, as well as other financial aspects, on remand, the trial court may reconsider the entire plan of equitable distribution, including the subjects of alimony and attorney's fees.").

*The Error in the Determination of the Former Wife's Income for Purposes of Child Support*

The Former Wife argues that the trial court erred in determining her net income by not considering her expenses. The trial court was particularly detailed in its determination of the Former Wife's income. The trial court used the Former Wife's 2015 tax returns, and her stipulation that her income for 2016 was about the same, to conclude her gross income was $63,692. The trial court noted that the Former Wife listed business expenses of $25,942, for a net income of $37,750. However, the trial court also found that the Former Wife "double-counted" two of her expenses, for the automobile and cell phone, by claiming personal expenses for those two categories of $857 and $220 per month, respectively, while at the same time, listing them as business expenses. Therefore, the trial court found that the Former Wife's "true net income" was $50,684. We find no error in the calculation of net income for the Former Wife.

However, the trial court erred in not using its calculation of the Former Wife's net income for its child support calculation. In calculating child support, the final judgment reflects that the trial court used a monthly income of $5,307.66 for the Former Wife. That would mean the annual income amount for Former Wife used to calculate child support would be $63,691.92 ($5,307.66 x 12 = $63,691.92), the amount of her *gross* income. As the Former Wife correctly argues, section 61.30(2)(a)3., Florida Statutes (2016), states:

> (2) Income shall be determined on a monthly basis for each parent as follows:

3

(a) Gross income shall include, but is not limited to, the following:

. . . .

3. Business income from sources such as self-employment, partnership, close corporations, and independent contracts. *"Business income" means gross receipts minus ordinary and necessary expenses required to produce income.*

(emphasis added).

Additionally, it seems that the trial court used the gross income for *both* parties in determining the child support award. However, according to section 61.30, the amount of child support is to be determined by the parents' *net* incomes. *See* § 61.30(6), Fla. Stat. (2016) ("The following guidelines schedule shall be applied to the combined *net income* to determine the minimum child support need." (emphasis added)); *see also* § 61.30(10), Fla. Stat. (2016) ("Each parent's actual dollar share of the total minimum child support need shall be determined by multiplying the minimum child support need by each parent's percentage share of the combined monthly net income."). Therefore, the trial court erred in calculating the child support by using gross income amounts. Additionally, the Former Husband stipulated that the Former Wife had to pay self-employment taxes, and therefore concedes the taxes should have been considered. Thus, we reverse the trial court's determination as to the amount of child support to consider the parties' net income as well as the Former Wife's self-employment taxes.

*The Error in the Award of the Former Wife's Interest in the Former Husband's Pension Plan*

The Former Wife argues that the trial court made an improper award of her interest in the Former Husband's pension plan because the final judgment erroneously stated the pension plan is maintained by a municipality, when in fact, the plan was merged into the State of Florida retirement plan prior to the final hearing. The Former Wife also argues the trial court erred by not reserving jurisdiction to enter a qualified domestic relations order ("QDRO") to enforce the equitable distribution of her interest in the plan, including cost of living adjustments. However, the final judgment did make provisions for a QDRO if the municipal plan allowed for such. The Former Husband agrees that the final judgment erroneously described his pension plan as being maintained by a

4

municipality and agrees the final judgment should be corrected in that regard. Thus, we reverse the final judgment as to this issue and remand for the trial court to correct its award of the Former Wife's interest in the Former Husband's State of Florida retirement plan.

*The Error in Failing to Rule on Life Insurance*

Finally, the Former Wife argues that the trial court erred in failing to rule on life insurance. The Former Husband agrees that the parties stipulated that the Former Wife would own the Former Husband's life insurance and she would pay the premiums, and vice versa. The Former Husband concedes that if the Final Judgment "needs to be supplemented" to incorporate their agreement, he does not object. Therefore, the final judgment is reversed as to this issue and remanded for the trial court to amend it to reflect the parties' stipulations.

*Conclusion*

We reverse the final judgment and remand the case for the trial court to make appropriate corrections to the final judgment consistent with our determinations above. We do not perceive the need for the trial court to entertain additional evidence to correct the errors requiring reversal, but should that be needed, it is incumbent on the parties to move this Court to amend our remand instructions. The parties are free to submit whatever stipulations they contend will assist the trial court in carrying out the remand instructions. A motion asking this Court to amend the remand instructions is not an appropriate vehicle to obtain a rehearing or reconsideration of our determinations.

*Affirmed in part, reversed in part, and remanded with instructions.*

LEVINE and FORST, JJ., concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**

5