# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-1274
LT Case No. 2022-DR-002561-A

———————————————

ROBERT M. WARNER,

    Appellant,

    v.

CAROLYN M. WARNER,

    Appellee.

———————————————

On appeal from the County Court for Marion County.
R. Gregg Jerald, Judge.

Brian P. North, of Kenny Leigh & Associates, Huntersville, NC,
for Appellant.

Carolyn M. Warner, Ocala, pro se.

October 3, 2025

WALLIS, J.

Robert Warner ("Former Husband") appeals the Final Judgment dissolving his marriage to Carolyn Warner ("Former Wife"). He contends that the trial court erred in: (1) awarding Former Wife durational alimony because competent, substantial evidence did not support imputing income to him or a finding that Former Wife had a need for the amount of alimony awarded; (2) calculating child support because competent, substantial evidence

did not support imputing income to him or awarding Former Wife retroactive child support; and (3) including the value of dissipated marital assets in its equitable distribution scheme. We agree on all three points and reverse and remand for further proceedings.

**Facts**

Former Husband and Former Wife were married on August 20, 1999, and Former Husband filed the Petition for Dissolution of Marriage on August 1, 2022. They had three children together. At the time the Petition was filed, only two of the children were minors, and by the time of trial, only their youngest child (K.R.W.) was still a minor.[1] Of relevance to this appeal, Former Husband requested an award of child support as appropriate due to his request for majority timesharing and equitable distribution of the parties' assets and liabilities. In her Amended Answer to the Petition and Counter-Petition for Dissolution of Marriage, Former Wife requested an award of child support, alimony, and equitable distribution of the parties' assets and liabilities.

At the February 2024 trial, Former Husband, age 52, testified extensively about the couple's finances and his employment. Specifically, from 2011 through 2019, he worked at Shands Hospital as a Certified Registered Nurse Anesthetist ("CRNA") making less than $150,000 per year. From 2019 through 2022, Former Husband owned his own business, Star Fire Anesthesia, working as a CRNA. While self-employed, Former Husband's yearly income was closer to $250,000 per year. In 2022, he accepted a job as a CRNA at a hospital in Ocala, Florida with an annual salary of $150,000. He was working at the Ocala hospital at the time of trial.

Former Husband acknowledged that he chose to close his business and return to hospital employment for several reasons. He did not have any benefits while self-employed and he needed insurance for himself and his family. He also needed more consistent hours for his family, which hospital employment

---

[1] K.R.W. turned eighteen years old in August 2024. Therefore, at the time of the appeal, none of the parties' children are minors.

2

provided. He also believed that it would not be possible to remain self-employed as a CRNA long-term because it is "highly stressful," there is no permanency, and there is a great deal of burnout associated with being self-employed as a CRNA. Former Husband was adamant that he did not accept the position at the Ocala hospital in order to reduce his salary for purposes of litigation. Rather, he accepted the position that offered the best medical coverage for himself and his children. Noticeably absent from the proceedings before the trial court was any evidence regarding what income Former Husband would earn if he chose to return to his previous self-employment.

Former Husband moved out of the marital home in February 2023 and he has been renting a home in the interim. Throughout the dissolution proceeding, he paid all of the marital bills excluding only Former Wife's food and gas. He specifically paid Former Wife's mortgage, electric, waste, water, car payments, and car insurance. Former Husband acknowledged that he did not pay child support from the time of separation in February 2023 until the time of the temporary support hearing on November 1, 2023.

Finally, Former Husband testified about two of the parties' retirement accounts. A Lincoln Retirement Account had about $51,000 at the beginning of the case and approximately $15,000 at the time of trial. A Brookstone IRA had about $58,000 at the beginning of the case and approximately $50,000 at the time of trial. Former Husband admitted that he removed the funds without Former Wife's consent or a court order allowing him to do so. He used the money from those accounts to pay for costs associated with the divorce, including repairs to the home, his other expenses, expenses related to a medical procedure, and his and Former Wife's attorney's fees.

Former Wife, who was 58 years old, testified that she currently worked part-time because she was homeschooling K.R.W. After he graduated from high school, Former Wife planned to work more. She estimated that her monthly expenses were $7,433 because Former Husband had been paying some household bills, but he recently stopped paying those bills. Former Wife did not currently have the ability to pay her monthly expenses. Former Wife admitted that part of her $1,160 in monthly food

3

expenses included food for K.R.W. and the parties' middle (adult) child who was living with her. Former Wife estimated that the cost of food for herself would be about $400 to $500 per month. Finally, Former Wife could not afford her own attorney's fees and had to borrow $5,000 to pay them.

The trial court subsequently entered a Final Judgment, which addressed alimony, child support, retroactive child support, and equitable distribution. While considering whether to impute income to Former Husband, the trial court found that:

> [Former Husband's] testimony was clear and unequivocal that the decision to close his business during the pendency of this litigation, which resulted in a corresponding significant decrease to his claimed compensation, was a voluntary decision . . . and that nothing would prevent him from resuming his business as a self-employed registered nurse anesthetist. In any event, the current employment of the [Former Husband] pays significantly less than [he] was earning while self employed and, given that he voluntarily closed his business earning substantially more than he currently earns along with his testimony that there is nothing preventing him from restarting that business, **the Court finds that the [Former Husband] is currently voluntarily underemployed as a result of the actions he has taken during this litigation to decrease his income.**

(Emphasis added). The trial court then averaged Former Husband's pay while self-employed, $220,499.24, and used that figure as the amount of income to impute to him for purposes of child support and alimony.

The court found that Former Wife's monthly expenses totaled $7,433, the amount she claimed, and imputed annual income in the amount of $80,073 (or $6,672.75 monthly) to her. Consequently, the court found that Former Wife had a need for alimony.

Based on these figures, the trial court ordered Former Husband to pay Former Wife child support of $1,067.56 from April

1, 2024, through August 1, 2024, when K.R.W. turned eighteen.  It also ordered Former Husband to pay Former Wife retroactive child support from February 2023 through October 2023, which totaled $8,445.09.

Using the same figures for the parties' imputed incomes, the trial court awarded Former Wife bridge-the-gap alimony between April 1, 2024, and July 31, 2024, and required Former Husband to pay some of Former Wife's monthly expenses.  It further ordered that Former Husband pay Former Wife $1,250.00 per month in durational alimony for ten years beginning on August 1, 2024, and ending on July 31, 2034.

Finally, the trial court concluded that Former Husband voluntarily depleted the parties' previously discussed retirement accounts by taking money from them without Former Wife's consent or order of the trial court.  As a result of Former Husband's "misconduct," the trial court set the values of those accounts at the value that existed at the time the case was filed.  As a result of these and other findings related to equitable distribution, the trial court found that Former Husband owed Former Wife an equalizing payment of $16,994.35.

Former Husband filed a timely motion for rehearing raising the issues that he raises on appeal.  The trial court denied the motion for rehearing without elaboration.

## Standard of Review

The abuse of discretion standard applies to a trial court's decisions regarding alimony, child support, imputation of income, and equitable distribution. *Schmidt v. Schmidt*, 373 So. 3d 645, 649 (Fla. 5th DCA 2023); *Johnson v. Johnson*, 371 So. 3d 944, 953 (Fla. 5th DCA 2022); *Brady v. Brady*, 229 So. 3d 892, 895 (Fla. 5th DCA 2017).

## Alimony

With regard to alimony, Former Husband argues that the trial court erred in imputing income to him because the evidence did not support a finding that he was voluntarily underemployed and because it was error to average his previous incomes when

5

determining the amount to impute. He additionally argues that there was no showing that Former Wife had a need for alimony and some of her expenses should not have been included when determining her need.

When determining whether to impute income to a former spouse for purposes of child support, alimony, and attorney's fees, one factor that courts consider is the voluntary unemployment or underemployment of the spouse. *Freilich v. Freilich*, 897 So. 2d 537, 541 (Fla. 5th DCA 2005). To impute income to an underemployed spouse, the court must make two findings: (1) that the termination of income was voluntary; *and* (2) "the spouse's underemployment was owing to 'less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.'" *Frerking v. Stacy*, 266 So. 3d 273, 276 (Fla. 5th DCA 2019) (quoting *Schram v. Schram*, 932 So. 2d 245, 249–50 (Fla. 4th DCA 2005)). A spouse's decision to voluntarily resign from a position does not, standing alone, mandate imputation of income. *Gillespie v. Holdsworth*, 333 So. 3d 278, 281 (Fla. 2d DCA 2022). Both findings are required. A trial court's decision to impute income to a spouse will be affirmed if it is supported by competent, substantial evidence. *See Gerville-Reache v. Gerville-Reache*, 307 So. 3d 962, 965 (Fla. 1st DCA 2020).

We conclude the trial court erred when it imputed income to Former Husband for two reasons. First, assuming without deciding that Former Husband was voluntarily underemployed by leaving his self-employment, there was no competent, substantial evidence to establish the income he could earn if he returned to self-employment. Second, the trial court erred when it imputed $220,499.24 to Former Husband based on his past average earnings. *See Jorgensen v. Tagarelli*, 312 So. 3d 505, 506–07 (Fla. 5th DCA 2020) (holding that it was error to impute income to former wife in an amount that was based solely on her past earnings when there was no evidence of wife's current earning ability); *Jones v. Jones*, 295 So. 3d 1226, 1228 (Fla. 5th DCA 2020) (reversing portion of amended final judgment imputing income to wife in amount of $17.50 per hour where competent, substantial evidence did not support that amount because it was based solely on her past income).

6

In addition, the trial court erred in finding that Former Wife needed $7,433 per month when that figure included $1,160 for Former Wife's food expenses, which she admitted included food for K.R.W. and their adult child who was living in the home. *See Lin v. Lin*, 37 So. 3d 941, 942 (Fla. 2d DCA 2010) (explaining that "an award of alimony that includes amounts for children's expenses that have already been accounted for in a child support award constitutes an impermissible double-counting of those expenses and requires reversal"); *Coniglio v. Coniglio*, 969 So. 2d 579, 580 (Fla. 4th DCA 2007) ("As for the expenses associated with the couple's grown daughter, since a parent has no obligation to support a grown child, any expenses associated with that child are not properly considered in awarding alimony."). Therefore, on remand, when recalculating the alimony award, the trial court should reconsider Former Wife's need.

## Child Support

Former Husband next argues that the trial court's award of child support must be reversed because it was error to impute income to him. For the reasons previously explained, the trial court erred in imputing income to Former Husband based on its finding that he was voluntarily underemployed. Consequently, we reverse the child support award and remand for the trial court to recalculate that figure.

## Retroactive Child Support

Former Husband also argues that the trial court erred in awarding retroactive child support to Former Wife for the period of time that he paid marital expenses. Section 61.30(17), Florida Statutes, provides that "the court has discretion to award child support retroactive to the date when the parents did not reside together in the same household with the child." When determining the retroactive award, section 61.30(17)(b) requires the court to consider "[a]ll actual payments made by a parent to the other parent or the child or third parties for the benefit of the child throughout the proposed retroactive period." The obligor parent is entitled to credit for payments made during the retroactive period that would qualify for such a credit under section 61.30(17)(b). *See Williams v. Gonzalez*, 294 So. 3d 941, 945 (Fla. 4th DCA 2020); *Ditton v. Circelli*, 888 So. 2d 161, 163 (Fla. 5th DCA 2004).

7

Here, Former Husband testified that he moved out of the marital home in February 2023 and, at that time, he began paying all of the marital bills. He estimated that he paid approximately $3,000 per month for Former Wife's expenses, which included the mortgage, electric, water, waste, and Former Wife's car payment and car insurance. It was undisputed that Former Husband did not pay child support to Former Wife from February 2023 through the time of the temporary support hearing.

There is no question that Former Husband's payment of the marital bills benefitted the minor child who was living with Former Wife during that time. Therefore, under section 61.30(17)(b), the trial court should have given Former Husband credit for those payments when determining the amount of retroactive child support that he owes to Former Wife. *See Douglas v. Douglas*, 328 So. 3d 1071, 1074 (Fla. 5th DCA 2021) (remanding for recalculation of retroactive alimony and child support award where trial court abused its discretion by not awarding former husband any credit against payment for having provided support for former wife and their children during divorce proceedings); *Julia v. Julia*, 263 So. 3d 795, 798 (Fla. 4th DCA 2019) (reversing and remanding for trial court to recalculate retroactive child support award with credit for mortgage payments former husband made on marital home during pendency of dissolution proceedings). Accordingly, on remand, the trial court shall recalculate the retroactive child support award with credit for the payments that Former Husband made during the retroactive period.

### Equitable Distribution

Former Husband finally argues that the trial court erred in finding that he engaged in misconduct when he depleted the Brookstone IRA and the Lincoln Retirement Account. As a result, the trial court erred in charging him $41,401.69 when fashioning the equitable distribution award, which resulted in his having to pay Former Wife an equalizing payment of $16,994.35. He contends that the evidence does not support a finding of intentional misconduct.

In general, "it is error to include assets in an equitable distribution scheme that have been diminished or dissipated

8

during the dissolution proceedings." *Roth v. Roth*, 973 So. 2d 580, 584 (Fla. 2d DCA 2008). However, one party's misconduct during the dissolution proceedings, which results in dissipation of a marital asset, "may serve as a basis for assigning the dissipated asset to the spending spouse when calculating equitable distribution." *Id.* at 584–85. "The misconduct necessary to support inclusion of dissipated assets in an equitable distribution scheme does not include mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves." *Id.* at 585. Rather, "there must be evidence of the spending spouse's intentional dissipation or destruction of the asset." *Id.* The use of a marital asset "out of necessity and for reasonable living expenses does not justify an award of a depleted asset absent evidence of misconduct." *Lopez v. Lopez*, 135 So. 3d 326, 328 (Fla. 5th DCA 2013).

As Former Husband correctly asserts, there is no record evidence supporting the trial court's finding that he committed misconduct when he removed money from the retirement accounts. The only evidence on the subject came from his testimony. He explained that he used the funds withdrawn from those accounts to pay marital bills, his own medical and living expenses, and the costs associated with the divorce, including both his and Former Wife's attorney's fees. While he admitted that he did not obtain permission from the court or from Former Wife before removing the money, there was absolutely no evidence that he intentionally dissipated or destroyed the money from the retirement accounts necessary to support a finding of misconduct. Therefore, the trial court erred in valuing the Brookstone IRA and the Lincoln Retirement Account at the time the case started. *See Niederkohr v. Kuselias*, 301 So. 3d 1112, 1113 (Fla. 5th DCA 2020) (finding trial court properly found that Former Wife had intentionally dissipated some of the settlement funds and attributed those amounts to her, except for the funds that she spent on the mortgage, utilities, HOA fees, car insurance, and health insurance because those expenditures not only benefitted her and Former Husband, but they were also related to the marriage); *Roth*, 973 So. 2d at 586 ("Because there is uncontradicted evidence in the record that the dissipated funds were used to pay marital expenses during the dissolution proceedings and because there is no evidence that the Husband engaged in misconduct in expending

the funds, the trial court abused its discretion in including these dissipated funds in the equitable distribution scheme.").

## Conclusion

The trial court erred in: (1) imputing income to Former Husband because competent, substantial evidence did not support a finding that he was voluntarily underemployed or the amount imputed; (2) calculating Former Wife's need for alimony where that figure included expenses for the parties' two children; (3) ordering Former Husband to pay retroactive child support to Former Wife without giving him credit for payments he made for marital bills during the retroactive period; and (4) finding that Former Husband committed misconduct when he removed money from the retirement accounts and including the dissipated funds in the equitable distribution scheme. Accordingly, we reverse the Final Judgment and remand for the trial court to recalculate alimony, child support, retroactive child support, and equitable distribution, which will necessarily affect the equalizing payment.

REVERSED AND REMANDED WITH INSTRUCTIONS.

JAY, C.J., and EISNAUGLE, J., concur.

––––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––––

10