983 So.2d 1198 (2008)
Larry BATOR, Appellant,
v.
Sandra OSBORNE f/k/a Sandra Bator, Appellee.
No. 2D07-393.
District Court of Appeal of Florida, Second District.
May 16, 2008.
Rehearing Denied June 30, 2008.
*1199 Roy W. Foxall of Roy W. Foxall, P.A., Fort Myers (withdrew after briefing), for Appellant.
Larry Bator, pro se.
Stacy L. Sherman of Law Offices of Sherman & Donald, Fort Myers, for Appellee.
FULMER, Judge.
Larry Bator (the Former Husband) appeals from a final judgment awarding Sandra Osborne (the Former Wife) an upward modification in child support and medical and dental expenses and granting the Former Wife entitlement to attorney's fees. We affirm as to the medical expenses but reverse and remand for further proceedings as to the upward modification in child support and attorney's fees.
The parties were divorced in 1999. They have one minor child. In March 2003, the Former Wife petitioned the court for an upward modification in monthly child support, reimbursement for out-of-pocket expenses for the child's medical and dental treatment, and attorney's fees. Finding the Former Husband voluntarily underemployed, the court imputed to him monthly income of $4000 and ordered his monthly child support obligation increased to $1193.[1] The court also ordered the Former Husband to reimburse the Former Wife $1383 for the child's medical and dental expenses and granted the Former Wife's request for attorney's fees, reserving jurisdiction as to amount. On appeal the Former Husband raises two issues: improper imputation of income and the Former Wife's lack of entitlement to attorney's fees.
Income imputed to the Former Husband
The Former Husband testified that his only income derived from selling items at a flea market every Saturday and Sunday, an activity that earned him about $600 per month. The court imputed $4000 in monthly income to the Former Husband based on the following evidence. There was testimony from the Former Wife's private investigator, who engaged in casual conversation with the Former Husband one afternoon at the flea market, that the Former Husband took in $50-$75 during the hour that the investigator was there. Extrapolating from this testimony, the court found that the Former Husband could take in $75 each hour during a sixteen-hour weekend and therefore $4000 per month.[2]
*1200 The imputation of income to a parent is governed by statute:
Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community. . . .
§ 61.30(2)(b), Fla. Stat. (2006). In other words, there is a two-step analysis, which must be supported by findings based on competent substantial evidence, see Hinton v. Smith, 725 So.2d 1154, 1156 (Fla. 2d DCA 1998):(1) the determination of whether the parent's underemployment was voluntary, and (2) if so, the calculation of imputed income. In the first step, the court must determine whether the underemployment resulted from the parent's "pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received." Schram v. Schram, 932 So.2d 245, 249-50 (Fla. 4th DCA 2005) (citations and internal quotation marks omitted).
We conclude that there was ample evidence that the Former Husband was voluntarily underemployed. His only gainful employment was, as noted, weekend flea market sales. The Former Wife testified that when they were married, the Former Husband made about $100,000 annually as a builder. There was no evidence of "physical or mental incapacity." See § 61.30(2)(b). The Former Husband's only reason for his limited workweek was that the ongoing litigation (the case before us and a parallel dependency case concerning the parties' child) took time and was causing him stress.
Thus, the sole issue is whether the imputed-income figure of $4000 per month, as found by the court, was based on competent substantial evidence. The three statutory factors on the basis of which imputed income is to be calculated are recent work history, occupational qualifications, and prevailing earnings levels in the community. § 61.30(2)(b). Our review of the record leads us to conclude that none of these was properly taken into consideration in the calculation of the Former Husband's imputed income. The only recent work history factored into the imputed-income calculation was the one hour at the flea market observed by the Former Wife's private investigator, which may or may not have been representative. Cf. Tarnawski v. Tarnawski, 851 So.2d 239, 242 (Fla. 4th DCA 2003) (concluding that the court's imputation of income was based on conjecture and noting that one aspect reflecting the lack of competent substantial evidence was that "[e]ven the investigator who followed the wife could account for only six hours in which she was at apartments where she might have been cleaning").[3]
*1201 Although the court's order contains some findings about the Former Husband's prior occupations, the court did not relate these to the imputed-income calculation. We acknowledge that outdated information may not be taken into consideration in calculating imputed income. See Wendel v. Wendel, 852 So.2d 277, 284 (Fla. 2d DCA 2003) ("It is error for a trial court to use outdated income figures when determining what level of income to impute to a parent.").[4] Nevertheless, on remand, the parties will need to explore what work the Former Husband is capable of performing at present,[5] and the court will need to appropriately factor this evidence into the imputed-income calculation. Finally, evidence of the third statutory factor  prevailing earnings levels in the community corresponding to the occupational qualifications for which evidence is presented  will need to be adduced. See Robinson v. Robinson, 713 So.2d 437, 438-39 (Fla. 2d DCA 1998) (directing the court to readdress child support award after conducting a "full and proper inquiry concerning the imputation of income," including occupational qualifications and prevailing income levels in the community.).[6]
We must therefore reverse and remand for proper findings as to imputed income and thus a redetermination of the monthly and retroactive child support amounts. However, we affirm as to medical and dental expenses, which are a lump sum for which there was competent substantial evidence and which are unrelated to imputed income.[7]
Attorney's fees
The court "grant[ed] the [Former] Wife's request for attorneys' fees and reserve[d] jurisdiction on the issue as to the amount of attorneys' fees." The Former Wife argues that this issue is not ripe for appeal. See McIlveen v. McIlveen, 644 *1202 So.2d 612, 612 (Fla. 2d DCA 1994) (denying review in part because "an order which only determines the right to attorney's fees without setting the amount is a nonappealable, nonfinal order"). However, there is an exception to the rule:
When an order setting the fee amount is entered after the notice of appeal is filed, but prior to a determination of the main appeal, the notice of appeal from the final judgment of dissolution matures and vests the appellate court with jurisdiction to review the entitlement issue. . . . We therefore have jurisdiction to review the final judgment of dissolution determining the former wife's entitlement to her attorney's fees and affirm that award. We do not have jurisdiction to review the amount awarded where the amount was not determined in the final judgment of dissolution and no notice of appeal was filed from the order setting the award amount.
Widom v. Widom, 679 So.2d 74, 75-76 (Fla. 4th DCA 1996) (citations omitted); see also Alpert v. Alpert, 886 So.2d 999, 1003 n. 2 (Fla. 2d DCA 2004) (acknowledging the rule of Widom, but declining to apply it in the procedural posture of that case). We therefore have jurisdiction to review the Former Wife's entitlement to trial attorney's fees.[8]
The court ruled as follows on the Former Wife's entitlement to attorney's fees:
g. The Court further finds that this matter was extended and protracted as a result of the [Former] Husband's persistent and continued delays, appeals and motions for rehearing. Accordingly, the Court also grants the [Former] Wife's request for attorneys' fees as presented in her Supplemental Petition and finds entitlement to same and reserves on the issue as to the amount.
h. The Court notes that the Former Husband has the ability to pay for the Former Wife's attorneys' fees and costs.
While we find no reversible error in the trial court's findings regarding protracted litigation, our decision as to the Former Husband's imputed income compels us to reverse as to the Former Wife's entitlement to attorney's fees for the trial court's reconsideration. See Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997) ("[T]he financial resources of the parties are the primary factor to be considered."); Roca v. Roca, 937 So.2d 736, 739 (Fla. 4th DCA 2006) ("Our decision regarding the imputed income requires reconsideration of the . . . attorney's fees awards."). Furthermore, although the court noted that the Former Husband had the ability to pay, it will also need to make a finding as to the Former Wife's need. See Perrin v. Perrin, 795 So.2d 1023, 1024 (Fla. 2d DCA 2001) (noting that "a trial court cannot decide the issue of attorney's fees without findings as to one spouse's ability to pay fees and the other spouse's need to have fees paid"); § 61.16(1), Fla. Stat. (2006) ("The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals." (emphasis added)).
*1203 Affirmed in part, reversed and remanded in part with instructions.
SILBERMAN and KELLY, JJ., Concur.
NOTES
[1] This figure includes a portion of the child's health insurance premiums. Additionally, the court ordered that the increase be applied retroactively to the time of the petition, which amounted to a payment of $40,185 due within 120 days of the final judgment.
[2] The court did not provide a calculation of how it derived the monthly net figure of $4000 from the per-weekend gross figure of $1200 (16 hours at $75/hour).
[3] When testifying, the Former Husband insisted that the extrapolation of flea market income proposed by Former Wife's counsel, based on the one hour's worth of income observed by the private investigator, was exaggerated:

Q. Sir, my question was the amount of monies you could make. I'm not asking you to justify
A. You're not even close.
Q. Okay.
A. Unless I expand.
The Former Husband's perhaps inadvertent implication that he could expand his flea market operation was not explored by counsel. We suggest that evidence of potential expansion may well have been a factor that the court could have validly used in its imputed-income calculation. See Roth v. Roth, 973 So.2d 580, 590 (Fla. 2d DCA 2008) ("A court may impute income to a party who has no income or who is earning less than is available to him or her based on a showing that the party has the capacity to earn more by the use of his or her best efforts." (emphasis added)).
[4] A related factor noted in the court's order and argued by the parties, but not part of the court's calculation of imputed income and thus not at issue in this appeal, is the finding that the Former Husband has an engineering degree. For guidance on remand, we note that even expert testimony (which was not adduced at the hearing) establishing the prevailing earnings level for holders of a particular degree does not "constitute evidence sufficient to impute that amount of income to a former spouse for child support purposes." Hinton, 725 So.2d at 1157.
[5] In addition to having an engineering degree, the evidence showed that the Former Husband had in the past worked as a substitute teacher, a home builder, and a real estate agent.
[6] As a final matter, we note that the parties argue about a $140,000 loan from the Former Husband's parents that the court found "may be considered income." The point is moot because the court did not use this additional finding in performing its imputed-income calculation. For guidance on remand, however, we note that family gifts and loans may generally not be used to impute income to a child support obligor. Elremmash v. Peterson, 676 So.2d 525, 525-26 (Fla. 2d DCA 1996); but see Cooper v. Kahn, 696 So.2d 1186, 1188 (Fla. 3d DCA 1997) (citing section 61.30(2)(a)(13), Florida Statutes, which includes in the definition of gross income "[r]eimbursed expenses or in kind payments to the extent that they reduce living expenses").
[7] Equal sharing of uninsured medical and dental costs was part of the original dissolution order.
[8] But we do not have jurisdiction to review the amount of the fees. The Former Husband includes the final fee order in an appendix to his reply brief. However, because he did not file a notice of appeal relative to that final order, we are without jurisdiction to review it. See Fla. R.App. P. 9.110(a)(1), (b); Widom, 679 So.2d at 76.