993 So.2d 1086 (2008)
Phillip GUARD, Appellant,
v.
April GUARD, Appellee.
No. 5D07-4280.
District Court of Appeal of Florida, Fifth District.
September 19, 2008.
*1087 Sean P. Sheppard, of Sheppard & Sheppard, P.A., St. Augustine, for Appellant.
No Appearance for Appellee.
*1088 ORFINGER, J.
Phillip Guard ("the husband") appeals the trial court's order on his exceptions to the findings and recommendation of the general magistrate concerning temporary support issues. The husband contends that the trial court abused its discretion by imputing income to him for purposes of calculating child support, failing to take child care costs into account when calculating child support, and imposing vague support requirements. We affirm in part and reverse in part.
After almost eight years of marriage, the parties separated and April Guard ("the wife") filed for a dissolution of the marriage. The parties have two children, both under the age of nine. The wife filed a motion for temporary alimony and child support pending the outcome of the dissolution action. At the hearing on the motion for temporary support, the wife asked the magistrate to impute an annual income of $40,000 to the husband based on his salary for seven years prior to the parties' move to Florida. She also requested that income be imputed to the husband based on his mother's regular, ongoing support payments to the couple during their marriage. Finally, the wife requested that the court award her temporary alimony and require the husband to pay child care costs.
In March 2006, the parties moved to St. Augustine, Florida, after the husband was forced to resign from his job in Georgia. For seven years prior to the move, the husband was employed as a rental manager, earning $40,000 per year. After the husband resigned from that job, the parties moved to St. Augustine in order to start Power Breakers, a concrete demolition company, with the husband's family. Although the husband owns twenty percent of Power Breakers, the business has never made a profit. At the time of the hearing, the wife, a dog groomer, was not working and had no income, in large part due to her child care responsibilities and lack of transportation.
The husband acknowledged that from early 2007 until they separated, his mother had supported the family by paying rent, making car payments and buying food. The wife estimated that the husband's mother had been paying seventy-five percent of their living expenses. The husband and wife agree that the husband's mother stopped supporting the family because the family business was not doing well. As a result, the wife's car was repossessed for nonpayment.
The wife testified that she had not been working since the parties' separation because she did not have a car and because she could not afford child care for the children. The wife claimed that she has an employment opportunity with a pet groomer in St. Augustine, and would begin working there once she secured child care and transportation. According to the wife, the younger child required full-day care, at a cost of $110 per week, and the older child required after-school care, which costs $50 per week. She claimed that the husband and his mother refused to care for the children during the day or pay for child care so that she could work. The husband testified that his mother cannot watch the younger child due to her shoulder injury, but had volunteered to watch the older child. He also testified that he would be able to watch the younger child one to two days a week, depending on his work schedule.
Following the hearing, the general magistrate found that the husband was voluntarily underemployed, and imputed a monthly gross income of $3,300 to the husband based on his prior employment in Georgia. However, the magistrate did not impute income based on his mother's support *1089 of the family. In addition, the magistrate elected not to impute income to the wife because of her child care responsibilities and lack of transportation. Based on the parties' financial affidavits and the husband's imputed income, the magistrate found that the husband had a temporary child support obligation of $847 per month. The magistrate denied the wife's request for temporary alimony, concluding that such an award would exceed the husband's ability to pay. However, the magistrate determined that the husband should be responsible for the cost of child care and should provide the wife with a vehicle so that the wife could become gainfully employed. The magistrate also recommended that the husband maintain medical and dental insurance coverage for the children. The trial court confirmed the general magistrate's recommendations over the husband's exceptions, concluding that the husband failed to show that the magistrate's recommendations were not supported by the record, were an abuse of discretion, or were a departure from the law. This appeal followed.
The decision whether to impute income in determining child support obligations is within the trial court's discretion and will not be reversed absent an abuse of discretion. See Rojas v. Rojas, 656 So.2d 563, 564-65 (Fla. 3d DCA 1995). "The imputation of income will be affirmed if supported by competent, substantial evidence." Swain v. Swain, 932 So.2d 1214, 1215 (Fla. 1st DCA 2006). "A determination of child support and alimony is within the sound discretion of the trial court, subject to the statutory guidelines and the test of reasonableness." Scapin v. Scapin, 547 So.2d 1012, 1013 (Fla. 1st DCA 1989). "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
Section 61.30(2)(b), Florida Statutes (2007), provides that when the trial court finds that a parent is voluntarily unemployed or underemployed, it shall impute income to that parent based upon the employment potential and probable earnings level of the parent, taking into consideration his or her recent work history, occupational qualifications and prevailing earnings level in the community. § 61.30(2)(b), Fla. Stat. (2007); Scapin, 547 So.2d at 1013. In order to impute income when a party is willfully earning less than the party has the capability to earn through his or her best efforts, the trial court must determine: (1) that the termination of income was voluntary, and (2) whether any subsequent underemployment "`resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.'" Schram v. Schram, 932 So.2d 245, 249-50 (Fla. 4th DCA 2005) (quoting Ensley v. Ensley, 578 So.2d 497, 499 (Fla. 5th DCA 1991)).
The husband argues that he was not voluntarily underemployed, as he was forced to resign from his previous job in Georgia. While the record supports the husband's forced resignation, Florida courts focus less on whether an allegedly underemployed parent left his or her previous employment voluntarily or involuntarily and more on what that parent has done since the prior employment, i.e., whether he or she has remained unemployed or underemployed voluntarily. See, e.g., Ensley, 578 So.2d 497 (holding it was error to impute income to husband, although voluntarily unemployed, as he has been diligently searching for job with comparable salary). In Connell v. Connell, *1090 718 So.2d 842 (Fla. 2d DCA 1998), a case similar to the one here, the husband was terminated from a job paying $55,000 per year. After his termination, the husband started his own lawn care business, where he made only $1,100 per month. Even though the husband had been terminated from his job, the trial court nonetheless determined that he was voluntarily underemployed, as he had the capacity to earn much more than he did running his own business.
Here, despite the family business's lack of success, the husband failed to seek profitable employment. Even though the husband was not initially voluntarily underemployed, in choosing to pursue his interest in the family business, he has become underemployed. We do not believe that the magistrate and the trial court abused their discretion in concluding that the husband was voluntarily underemployed and deciding to impute income to him.
Once the trial court has determined that a parent is voluntarily underemployed, the trial court may only impute a level of income supported by the evidence of employment potential and probable earnings based on history, qualifications, and prevailing wages. § 61.30(2)(b), Fla. Stat. (2007); Schram, 932 So.2d at 249-50 (holding that to impute income, trial court must make factual findings as to probable and potential earning level, source of imputed and actual income, and adjustments to income).
The husband argues that the magistrate did not conduct the full analysis required in determining the amount of income to impute. Specifically, he argues that the magistrate failed to consider the prevailing earning level in the community for his qualifications, as well as the availability of employment. We agree, as the record suggests, that in imputing $40,000 annually to the husband, the magistrate considered only the husband's past earnings and the fact that the husband has a commercial driver's license ("C.D.L."). The wife failed to produce any evidence as to what a job similar to the husband's Georgia job would pay in Florida, what jobs the husband could get with his C.D.L., and whether there were any such jobs available in the community. There was no consideration of the husband's qualifications, other than that he held a C.D.L., or the prevailing earning level in the community for someone with his qualifications and work experience. As such, the trial court's determination that the husband could earn the same level of income as he had in Georgia was error. Cf. Wendel v. Wendel, 852 So.2d 277, 284 (Fla. 2d DCA 2003) (determining that it was error, in part, for trial court to impute income to former husband when former wife presented evidence of prevailing earnings level in community, but not evidence of positions available at earnings level or that former husband qualified for available positions); Iglesias v. Iglesias, 711 So.2d 1316 (Fla. 2d DCA 1998) (holding that it was error to impute income to former husband based on roofing jobs listed in newspaper without evidence that jobs actually available to former husband or what pay would be).
Next, the husband contends that the trial court failed to use the appropriate method of calculating his child support obligations with respect to the children's child care costs. We agree.
As to child care costs, the child support guidelines provide:
Child care costs incurred on behalf of the children due to employment, job search, or education calculated to result in employment or to enhance income of current employment of either *1091 parent shall be reduced by 25 percent and then shall be added to the basic obligation. After the adjusted child care costs are added to the basic obligation, any moneys prepaid by the noncustodial parent for child care costs for the child or children of this action shall be deducted from that noncustodial parent's child support obligation for that child or those children. Child care costs shall not exceed the level required to provide quality care from a licensed source for the children.
§ 61.30(7), Fla. Stat. (2007). Thus, "section 61.30(7) requires the trial court, in apportioning child care costs, to reduce the total of those costs by twenty-five percent and then add the remainder to the basic obligation, which is then apportioned pursuant to statute." Bator v. Osborne, 799 So.2d 263, 264 (Fla. 2d DCA 2001).
Here, the magistrate ordered the husband to provide child care for the children so that the wife could resume employment as soon as possible, but failed to include that obligation in its child support calculations. It does not appear that the magistrate decreased the amount of the support obligation by twenty-five percent, as required in section 61.30(7). Instead, it provided only that the husband must provide child care, without specifying any amount that he must pay. Since the child care costs are directly connected to the wife's job search, section 61.30(7) applies. Thus, the general magistrate should have made a specific finding as to the amount of child care costs that the husband must pay, and reduce the amount by twenty-five percent prior to adding it to the husband's total child support obligation.[1]
Finally, we conclude that the requirement that the husband be responsible for child care and a vehicle for the wife is inconsistent with the magistrate's previous conclusion that the husband could not afford to pay for temporary alimony or other costs beyond his required child support obligations.
For these reasons, we reverse the trial court's order on the husband's exceptions and remand for a new hearing to determine the husband's child support obligations, including child care expenses. We also strike the obligations of the husband to provide a vehicle for his wife, absent a change in the husband's financial circumstances. In all other respects, the order is affirmed.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
PALMER, C.J. and LAWSON, J., concur.
NOTES
[1] The husband also argues that it was error not to impute income to the wife. In light of the wife's current inability to work given her lack of transportation and child care, we agree with the magistrate's ruling on this issue. However, once the wife has transportation and is receiving child support payments (including appropriate child care expenses), imputation of income to the wife should be revisited.