VAN NORTWICK, J.
Margaret Willwerth Chaphe, the former wife, appeals an order of the trial court entered following a hearing on her motion for contempt based upon her allegations that Robert Gordon Chaphe, appellee and the former husband, had refused to reimburse her for educational expenses as required by the parties’ marital settlement agreement. Because the order on appeal modifies the marital settlement agreement when no motion for modification of such agreement was pending, we reverse.
The parties were married in April 1978 in New York. Two children were born to the union. The parties obtained a Judgment of Divorce Nisi in Massachusetts on September 2, 1997. This judgment adopted a marital settlement agreement executed by the parties, with the assistance of counsel. With respect to the issues raised in this appeal, the agreement provides with regard to post-secondary education for the two children, as follows:
POST SECONDARY EDUCATION EXPENSES
Both parties acknowledge the children may each have the aptitude, desire and ability to attend college or vocational school after high school. The parties agree that any accounts held for the benefit of the children and, if possible, any tuition prepayment plans shall first be applied for educational expenses and that in the event the children can obtain any financial aid, scholarships, student loans, work study or any other type of funding, they shall do so and the Husband shall be responsible for 75% repayment and the Wife shall be responsibility for 25% repayment of any such loans. The parties shall cooperate in the preparation of applications for any financial aid or scholarships for which the children may qualify.
Any educational expenses, as defined hereafter, that cannot be met from any of the above sources shall be paid 75% by the Husband and 25% by the Wife. The obligation of either party to pay such expenses shall not be extended beyond either child obtaining the age of 23 years.
For purposes of this Agreement, “expense” shall include tuition and room and board while residing away from both parties, laboratory and special fees, books, application and registration fees, and reasonable transportation to and from school.
The Husband shall continue to serve as custodian for the children’s Fidelity Mutual Fund [accounts] and shall give the Wife an annual accounting of said accounts and any other accounts that he maintains for the benefit of the children, including the tuition prepayment plans in Florida. Such accounting shall include copies of statements of all such accounts or plans.
The Husband agrees to maintain and/or continue the regular payments towards the Florida tuition prepayment plans for both of the children.
In the event the college tuition prepayment plans are not used for attendance at Florida schools, any amounts refunded shall be applied to educational expenses elsewhere, or held or used for *1021 the children’s benefit in the event they do not attend college, such uses to be agreed on by the parties.
The agreement also provides:
12. The Husband and the Wife have incorporated into this Agreement their entire understanding and there are no promises, agreements, terms or understandings extrinsic to this Agreement. This Agreement contains the entire understanding of the parties with respect to matters herein set forth and no oral statements or understandings nor any prior written statements relating to the subject matter of this Agreement shall have any force or legal effect.
13. The parties both agree that this Agreement between them is not the product of fraud or coercion and that each has ascertained and weighed all of the facts and circumstances likely to influence their judgment. The parties both agree that this Agreement is fair and reasonable and they agree as to the finality of this Agreement as to division of property.
[[Image here]]
15. If either the Husband or the Wife shall default after written notice in any of his or her obligations hereunder and if court action becomes necessary for enforcement, the party in default shall be required to pay any and all reasonable counsel fees and expenses incurred by the other party in enforcing any of the terms and provisions of this Agreement.
After the dissolution, the former husband lived abroad for several years before settling in Florida. The former wife and the children were not residing in Florida at the time of dissolution and have not resided in Florida since. In 2001, the former husband moved to have the Massachusetts judgment of dissolution domesticated as a Florida Final Judgment of Dissolution. That motion was granted and the Massachusetts judgment was established as a Florida judgment on November 13, 2001. Thereafter, there were several motions of contempt filed by the former wife seeking enforcement of the judgment of dissolution.
In her Fourth Motion for Contempt, the former wife alleged that the former husband refused to reimburse her for certain educational expenses as he was required by the marital settlement agreement. The former wife also moved for an order to have the former husband directed to execute a form which would direct funds deposited in a Florida Prepaid College Plan to be forwarded to an out-of-state college which the parties’ oldest child was attending. The parties were directed to mediation with respect to the issue of their obligations regarding college expenses. In the order requiring mediation, the trial court reserved jurisdiction “to resolve the issue of the children’s post secondary educational expenses raised by the Former Wife in her Fourth Motion for Contempt, should the parties not be able to resolve them through mediation.”
Mediation proved unsuccessful, and a hearing was scheduled for the Fourth Motion for Contempt. At the conclusion of this hearing, the trial court announced that it was going to place a cap on the amount each parent would be responsible for paying for college costs. The trial court also indicated it was going to require the college-age child to begin working after her first year in college or obtain a “work/ study” so that “she’s making money to her college education to reduce the cost.” Counsel for the former wife inquired whether the court was not affecting a modification of the judgment of dissolution and, if so, whether such modifications were appropriate when there had been no finan *1022 cial discovery.[1] In response, the trial court observed that circumstances had changed since the dissolution agreement was executed.
The trial court entered the order under review, which provided in part:
This Court, sitting in its capacity as a court of equity, has serious concerns about the rote enforcement of a college education agreement in which there are no limits or bounds as to the former Wife’s and/or the parties’ children’s absolute right to select any college the child might be accepted to. While the parties’ agreement did not expressly limit post-secondary education choices to Florida state colleges or universities, neither does the agreement contemplate a child selecting Harvard or Yale or other comparably expensive university, which would subject the parties to expenses far beyond what was contemplated by their agreement, with the former Husband paying 75% and the former Wife only 25% of those excess expenses. Since [the daughter’s] selected college is not in Florida, and because her post-secondary education expenses detailed in the parties’ Marital Settlement Agreement will, in fact, be more than the comparable expenses for a similar education in Florida, the difference between her actual selection, is one only of degree.... It was the former Husband’s suggestion that the Court modify the parties’ agreement regarding college expenses by requiring each party to pay one-half of all enumerated college expenses in excess of those which would have been incurred if the children attended a Florida state college or university. Such a decision would then put the former Wife in the same position as former Husband, financially, were she to encourage the selection of an out of state college, which might and likely would be more expensive than a comparable education at a Florida state college or university. This Court declines to embrace that option. The primary reason for rejecting the 50/50 division request is that to do so runs afoul of the Court’s other concern about the children’s post-secondary education expenses. The Court’s concern is over the children’s lack of financial responsibility for the expenses of their education at a non-Florida college or university, in that Mom and Dad would be paying for everything, with no financial responsibility on the children’s part because of his or her college choice. Finally, on the subject of the children’s education, they should contribute financially, if necessary, especially if non-Florida schools are selected. Therefore, if it is necessary, after the completion of the child’s first two semesters in college, they should each engage in work study programs or other part-time work to assist with the expenses of their college education.
[[Image here]]
[T]he Court hereby establishes certain maximum dollar limitations per semester for both parties’ contributions to their children’s post-secondary education .... Once [the older child’s] prepaid college plan has been applied and her Fidelity funds exhausted, such college expenses as are thereafter required of the parties, under the terms of their agreement, shall be limited to a maximum per full-time semester of $2,000.00 for the former Husband, and $666.67 for the former Wife. These amounts are *1023 75% and 25% respectively, for a total of $2,666.67, which the Court determines to be the best reasonable estimate of what the parties would likely be paying if the child attended his or her post-secondary education at a state college or university in Florida. The same per semester limits on the parties’ contributions shall apply to [the younger child] also, regardless of where he attends school. While the $2,666.67 per semester represents what this Court believes might be over what is required for either child to attend college in Florida, this Court believes that, given the failure of the parties to require the children to attend their post-secondary education in Florida, it is not unreasonable to require some additional contributions of the parents, over and above what would likely be expended even in Florida. However, the rights of the children to choose where they will attend college shall not be their ticket to a free college education wherever they wish to go. There will be financial consequences of their choices, and, those consequences shall be that each child shall be financially responsible for any post-secondary education expenses in excess of what is provided by their Florida prepaid college plan, their respective Fidelity accounts, and the $2,666.67 per full-time semester once the prepaid college plan money is applied, and each child’s Fidelity account is exhausted.
In the order, the trial court also required the older child to write a letter, at least one page in length, every two weeks to her father during her time in college detailing her academic and social experiences. Further, the court ordered that the parties’ younger child, who was not college age at the time the order was entered, to visit certain state universities in Florida; to contribute towards some of his college expenses; and to send biweekly letters to his father. The trial court explained that it was
mindful of the fact that the children are not parties to this cause, and that they are not subject to the orders of the Court to do or not to do anything. However, their continued entitlement to what is being provided for them, above and beyond their existing Florida prepaid plans, and each child’s Fidelity account, is dependent on their following the directive herein to each of them, and, if either of the children fail to follow the directives of this Court set forth herein, this Court can and will terminate the requirement of their parents to contribute to their post-secondary education beyond what is already in place for them in the form of the Florida prepaid college finds, and their respective Fidelity accounts.
There was no motion pending before the trial court for modification of either the marital settlement agreement or the judgment of dissolution. During the dissolution proceedings, the parties, with the assistance of counsel, had executed a comprehensive marital settlement agreement which set forth, among other things, the parties’ respective obligations concerning the children’s post-secondary educational expenses. To be sure, the record reflects that the parties have differences of opinion as to the appropriate post-secondary educational avenues their children should follow. However, the jurisdiction of the trial court was not invoked to modify the settlement agreement and the court’s extensive modifications of that agreement as noted above were not necessary to its enforcement. Certainly, a marital settlement agreement is a contract subject to interpretation as any other. Underwood v. Underwood, 64 So.2d 281 (Fla.1953). Nevertheless, a court may not remake a settlement agreement under the *1024 guise of interpreting the agreement, even where an ambiguity exists. Bingemann v. Bingemann, 551 So.2d 1228 (Fla. 1st DCA 1989); Martinez v. Martinez, 383 So.2d 1153 (Fla. 3d DCA 1980). Further, a modification of a judgment constitutes a jurisdictional defect where there has been no pleading requesting modification. See Anthony, State Dep’t of Health and Rehabilitative Servs. v. Snell, 630 So.2d 606 (Fla. 1st DCA 1993); Leibowitz v. Leibowitz, 611 So.2d 629 (Fla. 4th DCA 1993); Torres v. Marzelli 657 So.2d 943 (Fla. 4th DCA 1995).
The former wife further argues that the trial court also erred in ordering the former husband to pay only “one-half of her reasonable attorney’s fees related to this matter.” Pursuant to the settlement agreement, either party is entitled to an award of that party’s reasonable attorney’s fees should judicial enforcement of the agreement becomes necessary. We do not reach this issue. A ruling which merely establishes entitlement to attorney’s fees without setting the amount is not appeal-able. See Miller v. Miller, 801 So.2d 1056 (Fla. 1st DCA 2001); Bator v. Osborne, 983 So.2d 1198 (Fla. 2d DCA 2008).
The order is reversed and remanded for further proceedings consistent with this opinion.
KAHN and BENTON, JJ, concur.

. The former husband had previously obtained a protective order precluding any financial discovery.