DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANDREA K. GILLETTE** n/k/a
**ANDREA ECONOMUS,**
Appellant,

v.

**JOSEPH G. GILLETTE,**
Appellee.

No. 4D16-1010

[September 6, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 502010DR004549XXXXMB.

Martin L. Haines, III of Brinkley Morgan, Lake Park, for appellant.

Troy William Klein of Law Office of Troy W. Klein, P.A., West Palm Beach, for appellee.

KUNTZ, J.

The Former Wife appeals the circuit court's final judgment of dissolution of marriage. We address three of the issues raised by the Former Wife in this opinion and affirm the remaining issues raised on appeal without further discussion.

First, we hold that the court did not abuse its discretion when it concluded the Former Husband was not voluntarily underemployed. Second, we affirm in part and reverse in part the court's calculation of the Former Wife's child support obligation. Third, we reverse the court's conclusion that the Former Husband's IRA was a non-marital asset.

### *Background*

After twelve years of marriage, the Former Husband filed a petition for dissolution of marriage and sought sole parental responsibility and to be designated the primary residential parent of the parties' only child. After

a three-day trial, the court issued a twenty-five page Final Judgment of Dissolution of Marriage.

The court found that the Former Wife had a bachelor's degree in communications from Loyola Marymount University in Los Angeles, California, and the Former Husband had a master's degree in mechanical engineering from the University of Florida in Gainesville, Florida.

Prior to the marriage, both parties worked outside the home. The Former Wife quit her job in 2001, and remained unemployed until the petition for dissolution was filed. The Former Husband was employed as an engineer working with cellular phone technology at a technology company, earning approximately $90,000 per year until 2004. The court found that the Former Husband's "experience is with cellular phone technology as it existed in 2004—which was before the release of the first iPhone and the other smart phones that are popular today."

In 2001, with the encouragement of the Former Wife, the Former Husband started a cloud computing storage business, Shadow Storage. He operated Shadow Storage simultaneously with his employment at the technology company until 2004. The court found that "the parties mutually decided in 2004, that the [Former] Husband would resign from [the technology company] where he worked with cellular phones to devote himself full-time to working with Shadow Storage, Inc., the family business, as well as raise the parties' son." Since 2004, the Former Husband has worked full-time for Shadow Storage.

The Former Husband testified that from the time he began working full-time at Shadow Storage until the filing of the petition, the Former Wife did not ask him to give up his work at Shadow Storage or demand that he find work outside the home. Importantly, for purposes of this appeal, the court found this testimony to be credible.

While the Former Wife agreed to the Former Husband's working at Shadow Storage during the marriage, her consent dissolved with the marriage. As a result, the Former Wife argued to the circuit court that the Former Husband is voluntarily underemployed. Although he testified that he works between forty and fifty hours per week at Shadow Storage, the highest amount of gross income he made in any year from the company was $13,000. The Former Wife presented a vocational expert who testified the Former Husband could be employed in various fields and earn significantly more than he earned at Shadow Storage. The court, however, found the expert had "little credibility" and noted various deficiencies in the testimony and methodology presented by the expert.

2

The court also found the Former Husband's flexible work schedule was a benefit to the couple and the minor child. The flexible schedule allowed the Former Husband to care for the child when he was ill, volunteer at school and with extracurricular activities, and allowed the Former Husband "to be highly involved in the minor child's education at a level that would have been highly unlikely had the Husband not resigned his position in 2004 with [the technology company] and committed himself to being a work from home father."

Based upon these findings, the court found the Former Wife had failed to meet her burden to establish the Former Husband was voluntarily underemployed. The Former Wife timely sought rehearing and, after the motion for rehearing was denied, appealed the court's judgment.

### *Analysis*

### A. The Court Did Not Abuse its Discretion in Determining the Former Husband Was Not Voluntarily Underemployed

We first address the Former Wife's argument that the court erred in its conclusion that the Former Husband is not voluntarily underemployed for purposes of calculating child support.

Our "standard of review is whether the trial court's determination is supported by competent, substantial evidence," *Heard v. Perales*, 189 So. 3d 834, 836 (Fla. 4th DCA 2015) (internal citation omitted), and we will not reverse unless the court abused its discretion. *Guard v. Guard*, 993 So. 2d 1086, 1089 (Fla. 5th DCA 2008); *see also Stanton v. Stanton*, 648 So. 2d 1233, 1234 (Fla. 4th DCA 1995) ("A child support determination is within the sound discretion of the trial court, subject to the statutory guidelines and the reasonableness test.").

The governing statute, section 61.30(2)(b), Florida Statutes (2015), provides that a court "shall" impute income to a parent it finds to be voluntarily underemployed. To determine whether to impute income as a result of voluntary underemployment, the court engages in a two-step process. *Heard*, 189 So. 3d at 836. First, the court must conclude the termination of income was voluntary. Second, "the court must determine whether the subsequent unemployment 'resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.'" *Id.* (quoting *Schram v. Schram*, 932 So. 2d 245, 249–50 (Fla. 4th DCA 2005)). The burden is on the party asserting that

3

the other spouse is voluntarily unemployed or underemployed. *Andrews v. Andrews*, 867 So. 2d 476, 478 (Fla. 5th DCA 2004) (citing *Blanchard v. Blanchard*, 793 So. 2d 989, 992 (Fla. 2d DCA 2001)).

Generally, the Former Wife asserts the court failed to sufficiently conduct the two-part test. She relies upon the evidence regarding the Former Husband's income after he left his employment at the technology company, arguing his testimony that he intended to remain self-employed "should have been a shock to the conscience of the trial court."

We acknowledge that a person can become "underemployed" by leaving a more lucrative position in order to pursue an interest in a family business. *Guard*, 993 So. 2d at 1090. In *Guard*, the wife filed a motion for temporary alimony and child support. During the marriage, the husband had been forced to resign from his job in Georgia and the parties moved to Florida to start a family business. Similar to the business in this case, the family business in *Guard* was not profitable. Due to the lack of income, the wife could not work because she could not afford child care for their children. The husband volunteered to care for the children two days a week, "depending on his work schedule." The trial court found the husband to be "voluntarily underemployed" and the Fifth District affirmed, finding no abuse of discretion by the trial court. *Id.* at 1090.

Similarly, in *Connell v. Connell*, 718 So. 2d 842 (Fla. 2d DCA 1998), the former husband sought a downward modification of his child support obligation. After he was fired for misconduct from a job earning $45,000 per year, he started a lawn business earning less than $13,200 per year. The circuit court found that he was "voluntarily underemployed" and the Second District affirmed, finding "the evidence sufficient to support the trial court's determination." *Id.* at 843; *see also Bator v. Osborne*, 983 So. 2d 1198, 1199–1200 (Fla. 2d DCA 2008) (finding "ample evidence" to support a similar result).

In *Vazquez v. Vazquez*, 922 So. 2d 368, 372 (Fla. 4th DCA 2006), the former husband petitioned the court for a downward departure of his child support obligations after being terminated from his job. The reason for his termination was misconduct, including using his employer's computer to send his former wife an offensive and threatening e-mail. Six months later, he opened his own business as a professional engineer earning between $2,900 and $3,750 per month. The court denied his petition and imputed income to him in the amount of $5,650 per month. The majority in *Vazquez* held that the court did not abuse its discretion "in finding that the husband's termination of employment from Florida Power and Light was voluntary and his subsequent employment efforts were less than

diligent." *Id.* at 370. Judge Gross disagreed with the characterization of the husband's employment termination and would have found the termination to be involuntary. Notwithstanding his disagreement as to the termination, he ultimately agreed with the result, stating: "I concur in the affirmance because the finding of voluntary underemployment turns on a credibility determination by the commissioner, which is entitled to deference on appeal." *Id.* at 373.

That same deference precludes a reversal here. The court made detailed findings regarding the origins of the Former Husband's employment, the agreement of the parties to that situation, and the benefit to the child as a result. Further, the court rejected the Former Wife's expert's testimony and evidence regarding the Former Husband's earning potential. The court noted the expert did not consider technological changes since the Former Husband was previously employed at the technology company working on cellular phones and, additionally, found the expert's methodology to be flawed.

In essence, the Former Wife now asks us to judge the wisdom of a business decision jointly made by the parties six years prior to their separation. We are not at liberty to question the wisdom, or lack thereof, of the Former Husband's decision to remain in a business that has proven unprofitable. There are a myriad of other issues beyond profitability a business owner considers when making business decisions. There are also many issues that a trier of fact may rely upon when making a determination regarding underemployment. If the issue of underemployment was one that focused solely on profitability, we would have a system that strangles small businesses which struggle at their inception and forces those business owners to cede their business in favor of employment at a more established company. That may be wise in some instances but not in others where the once struggling small business builds over time into a more profitable enterprise.

Regardless, here we are tasked with determining whether the court's determination is supported by competent substantial evidence. As there was competent substantial evidence to support each of the court's findings, we cannot conclude the court abused its discretion in determining the Former Husband was not voluntarily underemployed.

### B. The Calculation of Child Support

Next, the Former Wife argues the court erred in its calculation of child support when it failed to consider her monthly child care expenses and, additionally, based upon a mathematical error.

5

*i.  The Court Erred When It Failed To Account for the Former Wife's Child Care Expenses*

The Former Wife argues the court erred when it calculated her child support obligation without considering the amount she pays each month for child care. We agree, because section 61.30(7), Florida Statutes (2015), provides that "child care costs incurred due to employment . . . of either parent shall be added to the basic obligation." Therefore, on remand the court should recalculate child support after including the child care costs incurred by the Former Wife.

*ii.  The Mathematical Error in the Calculation of Retroactive Child Support*

With regard to the mathematical error, the court determined the Former Wife's net monthly income was $1,620, and her monthly obligation for the period of April 2010 through September 2013 was $348. While the court established a time period for retroactive child support from April 2010 through September 2013, it erroneously indicated there were forty-six months during that time period. In fact, there are forty-two months during that time period. The Former Husband does not dispute this mathematical error, but argues the issue was waived. We disagree. Due to this miscalculation in months, the court's retroactive award resulted in the Former Wife owing $1,392 too much. We reverse and remand for recalculation of the Former Wife's retroactive child support obligation, subject to any additional changes that result from including the Former Wife's child care expenses as discussed above.

## C.  The Former Husband's IRA

Finally, the Former Wife argues the court erred when it found she stipulated that the Former Husband's retirement account was a non-marital asset. The Former Husband concedes the Former Wife did not stipulate to this, however, argues the error was harmless. We disagree. On remand, the court should find that the retirement account is a marital asset, determine a date for valuation of the asset, and equitably distribute the asset as required by section 61.075, Florida Statutes (2015).

## Conclusion

We affirm the court's conclusion that the Former Husband is not voluntarily underemployed. However, we reverse the court's child support determination and retroactive award and remand for recalculation as indicated above. Additionally, we reverse the court's finding that the Former Wife conceded the Former Husband's retirement account was a

non-marital asset and remand for valuation and distribution of that marital asset.

*Affirmed in part, reversed in part, and remanded.*

GERBER, C.J., and GROSS, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***